# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Ricard*, 2012 IL App (1st) 111757

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CLAUDE F. RICARD, Petitioner-Appellant, and DANIELLE M. SAHUT, Respondent-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-1757 |
| Filed | August 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The public and private interest factors supported the trial court's order granting respondent's motion to dismiss petitioner's dissolution action on ground of *forum non conveniens* where the evidence showed France would be a more convenient forum for the litigation and French law did not present a danger that petitioner would be treated unfairly. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-11083; the Hon. Thomas J. Kelley, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | David I. Grund, Marvin J. Leavitt, Ilene E. Shapiro, and David C. Adams, all of Grund & Leavitt, P.C., of Chicago, for appellant. |
|---|---|
| | Bryan V. Reed and Tania K. Harvey, both of Reed, Centracchio & Associates, LLC, of Chicago, for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. |
| | Justices Garcia and Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner Claude F. Ricard appeals from a trial court order granting the motion of respondent Danielle M. Sahut to dismiss his petition for dissolution of marriage on the grounds of *forum non conveniens*. We affirm.

¶ 2                    BACKGROUND

¶ 3    Claude is a 62-year-old French citizen who was born in Marseille, France. Claude owns properties around the world, including a house in Glencoe and a house in Winnetka, Illinois. He currently resides in the house in Winnetka. Danielle is a 64-year-old French citizen who was born and resides in Lyon, France. The parties met in Brazil in October 2006 and were lawfully married in a civil ceremony in Aix en Provence, France, on June 21, 2008. They were married in a religious ceremony near Tagion, France, on August 19, 2008. This was Claude's third and Danielle's first marriage. No children were born to the parties. Claude has two children from his first marriage and Danielle has none. The parties did not enter into a premarital agreement.

¶ 4    The parties separated in May 2009. Claude filed a petition for divorce in Lyon, France, on June 17, 2009. In the petition, Claude represented that he resided in Aix en Provence, France, and that Danielle resided in Lyon, France. Danielle filed a separate and independent action for spousal support in Lyon, France, on August 7, 2009. Claude's divorce action in France was continued and the matter was set for November 3, 2009. The record is silent on what transpired on that date.

¶ 5    On December 3, 2009, Claude voluntarily dismissed his divorce action in France. On the same date, he filed a two-count "Petition for Declaration of Invalidity of Marriage and Other Relief" in the circuit court of Cook County, Illinois. The petition was filed pursuant to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/101 *et seq.* (West 2008)). Claude alleged in the petition that he was induced into marriage by fraud. He claimed that Danielle lacked the physical capacity to consummate the marriage by sexual intercourse and that at the time the marriage was solemnized, he did not know of the

-2-

incapacity. See 750 ILCS 5/301(2) (West 2008). Claude sought that the marriage be declared invalid or, in the alternative, that he be granted a divorce from Danielle. Danielle was personally served with summons of Claude's petition in France on January 19, 2010. She filed her appearance in Illinois on February 18, 2010.

¶ 6    On April 16, 2010, Danielle filed a motion to dismiss Claude's petition for lack of jurisdiction and on the grounds of *forum non conveniens*. Danielle later amended the motion, seeking dismissal of Claude's petition based on lack of subject-matter and personal jurisdiction (count I) and under the doctrine of *forum non conveniens* (count II). In count II, Danielle argued that France, rather than Illinois, would be a more convenient forum to resolve this litigation.

¶ 7    On May 3, 2010, the court in Lyon, France, entered a final judgment in Danielle's spousal support action, awarding her €5,000 (about $7,200) per month in support. Claude appealed from that judgment in France. That appeal was pending at the time the trial court entered the order appealed from in this case.

¶ 8    On August 10, 2010, Claude filed a motion for partial summary judgment on Danielle's amended motion to dismiss, arguing that the court had subject-matter jurisdiction to hear the case and personal jurisdiction over Danielle. After hearing argument, the court granted Claude's motion for partial summary judgment, finding that the court had both subject-matter and personal jurisdiction. The court reserved ruling on the issue of *forum non conveniens* until further briefing by the parties and an evidentiary hearing.

¶ 9    The parties conducted discovery on the issue of *forum non conveniens* and a six-day evidentiary hearing was held on February 22 through February 25, May 23 and May 26, 2011. On the last date of the hearing, Danielle represented to the court that she had filed a divorce action in Lyon, France, on or about May 18, 2011.

¶ 10    At the hearing, the court heard testimony from Danielle and Claude. Both parties required the services of an interpreter during the hearing.

¶ 11    Danielle testified that she was born and raised in France and, except for limited periods of time, has resided in France her entire life. She currently lives in a two-bedroom residence in Lyon, France, that she inherited from her mother. She has resided there since 1974. Danielle is a French citizen and only has a French passport. She said she does not speak, read or write English. She explained that she relies on an interpreter to communicate with her attorney. Danielle acknowledged that she has corresponded in English via e-mail. She also acknowledged that she was able to translate some legal documents using a translating Web site. Danielle said she spent about €4,000 on translator fees during the proceeding.

¶ 12    Danielle testified that she retired from a nursing career eight months before the parties' marriage. Danielle receives retirement income of €309 a month in addition to her spousal support. She has €12,000 in savings and a life insurance annuity of €40,000. Danielle does not conduct business in the United States of America. She also does not own property or have family in the United States.

¶ 13    Danielle testified that the parties were married in France because they are both French citizens, have friends in France and Claude's two sons were in France. Danielle said that after the June 21, 2008, civil ceremony, Claude moved into her house in Lyon, France. On

the same date, the parties applied for a United States permanent resident card (green card) by completing and signing an application for immigrant visa and alien registration. Danielle acknowledged that on the application she listed Claude's Glencoe home as her intended permanent address in the United States. She denied that she intended to live in the United States.

¶ 14     During the parties' seven-month marriage, Danielle visited Illinois with Claude on three occasions: about July 1, 2008, to July 20, 2008; about August 21, 2008, to September 15, 2008; and about October 9, 2008, to November 23, 2008. On each occasion, Claude made the travel arrangements and paid for all travel expenses. Danielle also visited Illinois before the parties' marriage but stayed no longer than six weeks at a time. Aside from traveling to Illinois for this litigation, Danielle has not been in the United States since November 2008.

¶ 15     Danielle received her green card in October 2008. She denied registering as a permanent resident of the United States with the French consulate in Chicago. She also denied listing Claude's Winnetka home as her residence with the French consulate. Danielle was impeached with a certified copy of a "Certificate of Registration on the Registry of French Citizens Located Outside of France and of Residence" that reflected Danielle's permanent residence to be Claude's house in Winnetka. Danielle acknowledged that she has not taken action to cancel or void her green card.

¶ 16     Danielle testified that she intended to call her primary physician and gynecologist as witnesses to rebut Claude's allegations that she was physically unable to consummate the marriage. Both physicians are in Lyon, France. Danielle said she also intended to call Claude's property manager and Claude's two accountants as witnesses. All three witnesses reside in France. Danielle identified a Ms. DuPont as another possible witnesses. Ms. Dupont is an accountant residing in France who evaluated Claude's income in Danielle's spousal support action filed in Lyon, France. Danielle identified about eight other potential witnesses that may need to testify in support of her maintenance claim or against Claude's allegations. All eight witnesses reside in or around Lyon, France. Danielle's counsel stipulated that these witnesses were not included in Danielle's answers to Claude's interrogatories.

¶ 17     Danielle testified that traveling to Chicago for court proceedings would be a hardship for her. She said that she was struck by a car on February 25, 2011, and injured her ankle. She was given emergency care in Chicago and treated in France for three broken bones. The treatment included surgery, insertion of screws and about five months of physical therapy in France. Danielle's treating physicians are in France. Danielle explained that she must keep her leg elevated to prevent swelling and that this posed a problem during her most recent flight to the United States. She acknowledged that she was able to take pain medication before her flight to control the swelling and pain.

¶ 18     Danielle also testified that litigating the case in Chicago would be a financial burden for her. She recounted her finances and the expenses she incurred in litigating this matter. She acknowledged that if the court ordered Claude to pay her travel expenses this burden would be lifted.

¶ 19     Claude testified that he was born, raised and educated in France. He is a French citizen and has only a French passport. He said that he has been married twice before and filed for

his second divorce in Cook County. That action was by agreement refiled in France and finalized there. Claude has two children from his first marriage. One child lives in Lyon, France, and the other in Brazil. Claude has a grandchild who lives in Lyon, France. Claude's mother also lives in France. He travels to France to visit his mother one to two times a year. Claude spent about four months in France in 2009 and about two months in France in 2010. Claude has no family in the United States.

¶ 20　　Claude started a successful business in France and moved to Illinois in 1995 or 1996. Before receiving his green card in 2008, he maintained the status of an E-2 investor and held an E-2 nonimmigrant investor visa card, which allows foreign entrepreneurs to carry out business in the United States. Claude established and conducted several businesses in Illinois. Claude said that he has filed both federal and Illinois income-tax returns as an Illinois resident. The tax returns are prepared by his accountant in Northbrook.

¶ 21　　Claude sold his Illinois business interests in 2007 and is currently retired. He receives €70,000 a year in retirement income from France. He also receives about €100,000 a year of rental income from properties he owns in France. He maintains a French bank account.

¶ 22　　Claude owns properties around the world, including the two in Illinois. The house in Glencoe is currently listed for sale and the house in Winnetka is his primary residence. The properties are worth $5 million and $7 million respectively. Claude also owns multiple rental properties in Lyon, France, and derives much of his income from those properties. Claude's property manager resides in Lyon, France. Claude also has a 50% ownership interest in a house in Perpignan, France. He purchased the house with a friend for €550,000. The house was purchased during the parties' marriage. Claude also owns an apartment in Brazil. In 2010, Claude sold property in Aix en Provence, France, for about €3 million. Claude's disclosure statement relative to his divorce from his second wife listed his gross assets as of June 2007 in excess of $10 million. He splits his time between Illinois, France and Brazil.

¶ 23　　Claude met Danielle in Brazil in October 2006 and they were lawfully married on June 21, 2008. Claude testified that after their civil marriage ceremony, the parties traveled to the United States on July 1, 2008, because they planned to live there. He said Danielle registered with the French consulate in Chicago upon their arrival in Chicago and provided the consulate with the address of Claude's house in Winnetka. Claude testified that on July 21, 2008, the parties traveled to France for the August 19, 2008, religious wedding ceremony. On August 21, 2008, the parties returned to the United States.

¶ 24　　In early October 2008, the parties traveled to France to retrieve their green cards at the American embassy in Paris. They returned to the United States on October 9, 2008, where the parties gave their green cards to an immigration official at the airport who registered them as permanent residents of the United States.

¶ 25　　Claude testified that on November 23, 2008, the parties traveled to Brazil. Claude returned to the United States on January 15, 2009. He said Danielle did not accompany him because she had decided she did not like the United States and refused to return there. Danielle remained in Brazil until she traveled to France in March 2009.

¶ 26　　Claude testified that he has had heart trouble for the past 15 years and that it is difficult for him to travel long distances. He recounted that he has had multiple blockages, heart

attacks and surgeries since about 1996. He said his most recent heart attack was in January 2011. At that time, he was hospitalized at Evanston Hospital in Illinois. Claude has treating physicians in Chicago, Paris and Aix en Provence. He said he travels to Brazil periodically for alternative healing treatments. He explained that one of the reasons he dismissed his divorce action in France was due to his health problems. He acknowledged that Danielle had rejected a settlement agreement they had negotiated in France. That settlement agreement would have served as a predicate for the French divorce.

¶ 27    Claude said that he was willing to pay for Danielle's expenses to litigate the case in Illinois. He explained that he had sufficient assets to pay for her and her witnesses to travel to Illinois and testify. He also said he would be willing to pay for translation of all necessary documents.

¶ 28    Mary Weiland testified that she had been a house and pet sitter for Claude for about three years. Weiland said that she interacted with Danielle on a daily basis when Danielle lived in Claude's Glencoe residence. Weiland said that she always communicated with Danielle in English and that she found Danielle's spoken English easier to understand than Claude's spoken English. Weiland explained that the only difficulty she observed Danielle having with the English language is that she occasionally had to refer to a dictionary.

¶ 29    After the hearing, the court heard closing argument from the parties. Danielle argued that the evidence presented favored transfer to France on the grounds of *forum non conveniens*. Claude argued that the court did not have the authority to grant an interstate *forum non conveniens* motion where one of the parties resides outside of the United States. He claimed that under section 104 of the Marriage Act (750 ILCS 5/104 (West 2008)), venue "shall be had in the county where the plaintiff or defendant resides." He maintained that the Marriage Act did not authorize the international application of the doctrine of *forum non conveniens*. The court deferred ruling on the motion to review the evidence.

¶ 30    Before the court ruled on the motion, Claude filed a petition for declaratory relief, arguing that Supreme Court Rule 187 (Ill. S. Ct. R. 187 (eff. Aug. 1, 1986)), as applied to this case, is unconstitutional. Rule 187 allows a party to an action to file a motion to transfer or dismiss the action under the doctrine of *forum non conveniens*. He claimed that if the action were transferred to France or dismissed it would thwart and violate his substantive due process right to obtain a remedy as guaranteed by both the state and federal constitutions.

¶ 31    On June 20, 2011, the trial court entered a written order granting Danielle's motion and dismissing Claude's petition under the conditions provided in Rule 187(c)(2). The court made the following findings in the order. First, the court found that Claude's choice of forum, Illinois, was entitled to substantial deference because he owns two houses in Illinois and claims his primary residence is in Illinois. Second, the court found that, despite having given substantial deference to Claude's choice of forum, under the facts of this case the private and public interest factors favored dismissal for *forum non conveniens*. Third, the court found that it had the authority to grant Danielle's interstate *forum non conveniens* motion based on the appellate court's decision in *In re Marriage of Clark*, 232 Ill. App. 3d 342 (1992) (affirming the circuit court's order granting wife's motion to dismiss husband's petition for dissolution of marriage on the grounds of *forum non conveniens* and transferring

the divorce action to the State of Massachusetts). Finally, the court denied Claude's petition for declaratory relief, finding that his constitutional right to obtain a remedy would not be violated if Danielle's motion were granted because Claude can still obtain his primary remedy and be awarded a divorce in France. Claude appeals.

¶ 32                                                    ANALYSIS

¶ 33        Claude first contends on appeal that the trial court erred as a matter of law and exceeded its authority when it dismissed his petition on the grounds of *forum non conveniens* pursuant to Supreme Court Rule 187. He argues that under section 105(a) of the Marriage Act, divorce actions are governed by article II of the Code of Civil Procedure (Code), also known as the Civil Practice Law. See 750 ILCS 5/105(a) (West 2008) ("The provisions of the Civil Practice Law shall apply to all proceedings under this Act, except as otherwise provided in this Act."). He claims that because the Marriage Act does not specifically incorporate article I of the Code, entitled "General Provisions," those provisions, including the supreme court's authority to enact rules, such as Rule 187, for the administration and enforcement of the Civil Practice Law, are inapplicable to proceedings under the Marriage Act. Claude thus maintains that Rule 187 and the doctrine of *forum non conveniens* referenced therein are superseded by the Marriage Act, which outlines the criteria for a matrimonial litigant to invoke the court's jurisdiction in a divorce proceeding, and that he satisfied those criteria. He asserts that when the trial court "improperly invoked" the doctrine of *forum non conveniens* and declined jurisdiction over the proceeding, the court defeated the role of the legislature to create a statutory cause of action for divorce under the Marriage Act.

¶ 34        Although Claude raises a novel argument for this court's consideration, in doing so he ignores the structure of the Code. The Code begins with article I, "General Provisions." Section 1-101, entitled "Short titles," provides that "[t]his Act shall be known" as the " 'Code of Civil Procedure.' " 735 ILCS 5/1-101(a) (West 2008). Section 1-105, entitled "Enforcement of Act and rules," provides that the "Supreme Court may provide by rule for the orderly and expeditious administration and enforcement of this Act." 735 ILCS 5/1-105 (West 2008). Accordingly, these general provisions, including section 1-105 which empowers our supreme court to enact rules for the administration of the Code, are specifically applicable to all articles of the Code, including article II, the Civil Practice Law. Therefore, by incorporating the Civil Practice Law, the Marriage Act also necessarily incorporates the general provisions of the Code, which serve an administrative function.

¶ 35        To otherwise interpret the Marriage Act, as pointed out by Danielle, would create absurd results. Namely, numerous other supreme court rules in addition to Rule 187 would be inapplicable to divorce actions under the Marriage Act. These include but are not limited to Rule 137, which governs sanctions (Ill. S. Ct. R. 137 (eff. Feb. 1, 1994)); Rule 213, which governs interrogatories (Ill. S. Ct. R. 213 (eff. Jan. 1, 2007)); Rule 214, which governs document production (Ill. S. Ct. R. 214 (eff. Jan. 1, 1996)); and Rule 216, which governs requests to admit (Ill. S. Ct. R. 216 (eff. Jan. 1, 2011)). Obviously, this is not a conclusion we are willing to reach nor is it one we believe the legislature intended. See *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010) (a reviewing court may consider the

consequences that would result from construing a statute one way or the other, while presuming that the legislature did not intend absurd, inconvenient or unjust consequences). Simply stated, the mere fact that the Marriage Act provides that jurisdiction and venue in a plaintiff's chosen forum may be proper, does not lead to the conclusion that the matter may not be transferred in accordance with the rules to another forum where jurisdiction also lies.

¶ 36     At oral argument, Claude retreated somewhat from this argument and raised the alternative novel argument that a *forum non conveniens* motion is not a proceeding under the Marriage Act. Contrary to Claude's argument, this court has long considered the doctrine of *forum non conveniens* to appropriately apply to a dissolution of marriage action. See *In re Marriage of Mather*, 408 Ill. App. 3d 853 (2011) (holding that Du Page County rather than Cook County was the more appropriate forum for a divorce action and affirming the circuit court's dismissal of husband's petition for dissolution of marriage on the grounds of *forum non conveniens*); *Clark*, 232 Ill. App. 3d 342 (affirming the circuit court's order granting wife's motion to dismiss husband's petition for dissolution of marriage on the grounds of *forum non conveniens* and transferring the divorce action to the State of Massachusetts); *In re Marriage of Kelso*, 173 Ill. App. 3d 746 (1988) (reversing circuit court's order granting respondent's motion to quash service of process based on lack of personal jurisdiction because respondent subjected herself to the jurisdiction of the court in dissolution of marriage proceeding by filing a motion to dismiss the proceeding on grounds of *forum non conveniens*).

¶ 37     We see no reason here to depart from this line of reasoning or embrace the narrow definition of proceeding proposed by Claude. Rather, a "proceeding" includes "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and "[a]ny procedural means for seeking redress from a tribunal or agency." Black's Law Dictionary 1324 (9th ed. 2009). This lawsuit, which was entitled "*In re* the Marriage of Claude Ricard and Danielle Sahut," No. 09 D 11083, was a proceeding under the Marriage Act and the hearing on the *forum non conveniens* motion was part of that proceeding.

¶ 38     In finding that the doctrine of *forum non conveniens* applies to divorce actions, we reject Claude's argument that the trial court exceeded its authority in dismissing his petition by applying the doctrine internationally. In considering this argument, we first note that Claude cites, and we have found, no legal authority to support his position. See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 208 (2007) (appellant has a duty to clearly define issues on appeal, cite pertinent authority and present a cohesive legal argument). This court need not consider arguments unsupported by citation to legal authority. See *Lowrey*, 375 Ill. App. 3d at 208-09.

¶ 39     Even ignoring the lack of legal authority, we note that neither the doctrine nor Rule 187 excludes the possibility that an action may be more convenient in an international forum. The doctrine "presupposes the existence of more than one forum in which jurisdiction may be obtained over the parties and the subject matter of a case and in which the controversy may be tried." *Stonnell v. International Harvester Co.*, 132 Ill. App. 3d 1043, 1044 (1985) (citing *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 364 (1983)). The doctrine does not specify that the alternate forum must be domestic. Rather, the alternative forum is proper if

it has " 'power to hear the case' and 'grant relief.' " *Stonnell*, 132 Ill. App. 3d at 1044 (quoting *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 117 (1981)). Similarly, Rule 187 authorizes the dismissal of an action to "another forum," without specifying that the other forum must be domestic. See Ill. S. Ct. R. 187(c)(2) (eff. Aug. 1, 1986).

¶ 40    Although admittedly trial courts do not have frequent occasion to consider an alternative international forum with regard to divorce actions, such forums are routinely considered by courts in commercial and product liability cases. See, for example, *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644 (2009) (affirming the trial court's denial of defendant's *forum non conveniens* motion seeking to transfer the case to the Republic of Peru, where the airplane crash giving rise to the litigation occurred); *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827 (2006) (affirming the trial court's denial of defendant's *forum non conveniens* motion seeking to transfer a product liability action to Australia, where the car accident occurred). We note that while in each of these cases transfer was denied, it was done so on the merits of the *forum non conveniens* motion and not due to the lack of the court's authority to transfer the matter internationally. We see no reason to make a distinction between these cases and divorce actions for purposes of *forum non conveniens*.

¶ 41    There is no question here that the French court is capable of adjudicating Claude's divorce action. The record shows that it has done so twice before. Forum selection and choice-of-law clauses may not be circumvented merely because foreign law or procedure might be different or less favorable. *Philips Electronics N.V. v. New Hampshire Insurance Co.*, 312 Ill. App. 3d 1070, 1084-85 (2000). Accordingly, we decline Claude's invitation to limit domestically the application of the doctrine of *forum non conveniens* in dissolution of marriage proceedings.

¶ 42    Having found that the trial court did not exceed its authority in dismissing Claude's petition on the grounds of *forum non conveniens*, we next consider Claude's argument that the trial court abused its discretion in doing so.

¶ 43    *Forum non conveniens* is an " 'equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice.' " *Mather*, 408 Ill. App. 3d at 857 (quoting *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006)); *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). This doctrine allows a trial court to transfer a case when a "trial in another forum 'would better serve the ends of justice.' " *Langenhorst*, 219 Ill. 2d at 441 (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)); *Mather*, 408 Ill. App. 3d at 857.

¶ 44    The burden is on the party seeking dismissal, in this case Danielle, to show that the relevant factors " 'strongly favor' " transfer. (Emphasis omitted.) *Langenhorst*, 219 Ill. 2d at 442 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108 (1990)); *Vivas*, 392 Ill. App. 3d at 656 (in product liability and negligence case where airplane crash was in the Republic of Peru with primarily Peruvian decedents, burden was on defendants to show factors strongly favoring transfer to Peru); *First American Bank v. Guerine*, 198 Ill. 2d 511, 517 (2002) (plaintiffs have a substantial interest in choosing a forum where their rights will be vindicated, and plaintiffs' forum choice should rarely be disturbed unless other factors strongly favor transfer. The defendant must show that the

plaintiff's chosen forum is inconvenient to the defendant and another forum is more convenient to all parties.).

¶ 45 " 'A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion.' " *Mather*, 408 Ill. App. 3d at 857 (quoting *Langenhorst*, 219 Ill. 2d at 441). This court will reverse a circuit court's decision on a *forum non conveniens* motion only if the defendants show that the court abused its discretion in balancing the relevant factors. *Mather*, 408 Ill. App. 3d at 857-58; *Langenhorst*, 219 Ill. 2d at 442. "A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Langenhorst*, 219 Ill. 2d at 442. The issue before us is not what decision we would have reached if we were reviewing the facts on a clean slate but whether the trial court acted in a way that no reasonable person would. *Mather*, 408 Ill. App. 3d at 858; *Vivas*, 392 Ill. App. 3d at 657.

¶ 46 Here, we find that a reasonable person could have taken the view adopted by the trial court. Generally, a plaintiff's choice of forum will prevail if the venue is proper and the inconvenience factors attached to the chosen forum do not greatly outweigh the plaintiff's substantial right to try the case in the chosen forum. *Guerine*, 198 Ill. 2d at 520 (citing *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36 (1994)). Before weighing these factors, the trial court must first determine how much deference to give to the plaintiff's choice of forum. *Mather*, 408 Ill. App. 3d at 858. If the plaintiff chooses a forum other than where he resides, his choice is not entitled to the same deference as the choice of his home forum. *Mather*, 408 Ill. App. 3d at 858; *Vivas*, 392 Ill. App. 3d at 657. Here, because Claude has a residence in Illinois and claims it to be his primary residence, his selection of forum deserved substantial deference. As a result, the trial court reasonably accorded substantial deference to his choice of forum.

¶ 47 Next, the trial court had to consider both the private and public interest factors in deciding a *forum non conveniens* motion without emphasizing any one factor. *Mather*, 408 Ill. App. 3d at 862; *Vivas*, 392 Ill. App. 3d at 658. The private interest factors include: " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 516). " 'A defendant seeking transfer is not required to show that the plaintiff's choice of forum is inconvenient; rather, transfer is allowed where defendant's choice is the substantially more appropriate forum.' " *Mather*, 408 Ill. App. 3d at 859 (quoting *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003)). After the court considers the totality of the circumstances, if a defendant proves that the balance of circumstances strongly favors transfer, her motion should be granted. *Mather*, 408 Ill. App. 3d at 859.

¶ 48 First, the convenience of the parties here weighs in favor of transfer to France. Danielle has shown that Claude's chosen forum is inconvenient for her. See *Langenhorst*, 219 Ill. 2d at 450 ("the defendant must show that the plaintiff's chosen forum is inconvenient to the defendant"). Danielle currently resides in Lyon, France. Except for limited periods of time, she has resided in Lyon, France, her entire life. She is a French citizen and only has a French passport. She has not resided in the United States since November 2008. She does not own property in the United States and has no family residing in Illinois. The record shows she was

-10-

not residing in Illinois when Claude filed his petition for dissolution of marriage.

¶ 49    Contrary to Claude's argument, the trial court found that Danielle is not fluent in English and required the aid of an interpreter during hearings. She is currently retired and receives a limited income of €309 per month in addition to spousal support. She has liquid assets of only €12,000. If the case proceeded in Cook County, the financial burden of defending the case would be great on Danielle. Although Claude agreed to reimburse Danielle for her travel expenses, it is difficult to measure the nonfinancial inconvenience to Danielle associated with litigating a case in a foreign country, *i.e.*, the inconvenience of travel, the time spent away from home and the anxiety of defending an action in a foreign-language-speaking country. Additionally, the process of arranging for reimbursement or even advance payment for such expenses would inevitably add another layer of litigation over those expenses.

¶ 50    On the other hand, Claude's inconvenience in litigating this matter in France would be substantially less than Danielle's inconvenience if the matter were litigated in Illinois. Claude is a French citizen and is fluent in French. He is a retired multimillionaire and owns multiple properties in Lyon, France. Claude has family in France and travels to France regularly to visit them. Although Claude said that it is difficult for him to travel long distances because of his heart condition, the record shows that he split his time in three different countries during the last three years. He spent at least four months in France in 2009 and at least two months in France in 2010. Claude also said that he has treating physicians in Paris and Aix en Provence, France. Based on this evidence, we believe that France is a more convenient forum for both parties.

¶ 51    Second, the relative ease of access to sources of testimonial, documentary and real evidence weighs in favor of transfer to France. Claude did not testify to or identify additional witnesses he intended to present. Danielle, however, testified to numerous witnesses that may need to testify in support of her maintenance claim or with regard to Claude's allegations against her. These witnesses include Claude's property manager and Claude's two accountants. All three witnesses reside in France. Danielle also identified a Ms. DuPont as another possible witnesses. Ms. Dupont is an accountant who evaluated Claude's income in Danielle's spousal support action filed in Lyon, France. Ms. DuPont also resides in France. Danielle further testified that she wanted to call her primary physician and gynecologist as witnesses to rebut Claude's allegations that she was physically unable to consummate the marriage. Both of these witnesses reside in France. Assuming all of these witnesses are willing to appear (see *Vivas*, 392 Ill. App. 3d at 659 (if the case remains in Illinois, witnesses in France are not compelled to appear in the United States)), the additional cost and difficulty of obtaining their attendance in Illinois strongly favors transfer to France. *Mather*, 408 Ill. App. 3d at 860.

¶ 52    Contrary to Claude's argument, we need not overlook the fact that most of Danielle's potential witnesses reside in France because she did not identify them at the outset of the case in her answers to Claude's interrogatories.

¶ 53    In addition to this testimonial evidence, all documents and real evidence are also located in France. Claude's sources of rental and retirement income originate entirely in France. Claude owns multiple rental properties in Lyon, France, and has a 50% interest in a house

in Perpignan, France. Claude also maintains a French bank account. As mentioned, compulsory process of Claude's financial information would be difficult if not impossible if the trial were held in Illinois. In considering this factor, however, we are mindful that the location of documents and records has become a less significant factor in *forum non conveniens* analyses given that documents can easily be sent electronically to Illinois. *Vivas*, 392 Ill. App. 3d at 659; *Woodward*, 368 Ill. App. 3d at 834.

¶ 54    Finally, the court was required to consider " 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Langenhorst*, 219 Ill. 2d at 443 (quoting *Guerine*, 198 Ill. 2d at 516). This factor also weighs in favor of transfer to France. The record shows that both parties required the services of an interpreter during the hearing on Danielle's motion to dismiss. The court noted in its written order that the hearing took "2 to 3 times longer due to the use of an interpreter." Danielle testified that she has to have an interpreter with her to communicate to her lawyer and that she spent about €4,000 to translate legal documents.

¶ 55    For these reasons, we cannot say that the trial court abused its discretion in finding that the private interest factors strongly favor transfer to France.

¶ 56    The trial court was also required to consider the public interest factors. These factors are: " '(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets.' " *Vivas*, 392 Ill. App. 3d at 660 (quoting *Langenhorst*, 219 Ill. 2d at 443-44).

¶ 57    First, the public interest factor of deciding marital controversies locally favors transfer to France. "In domestic relations cases where the marriage occurred in the same county that the marital home was located and the children resided, there is a strong tie to that county." *Mather*, 408 Ill. App. 3d at 861. Here, there is not a strong tie to Cook County. The parties were married in civil and religious ceremonies in France. Although the parties briefly resided in Illinois during the marriage, they also traveled back and forth to France. The parties had no children together. The parties' main sources of income are in France. Although Claude has property in Illinois, it was purchased before the parties' marriage and likely will not be considered marital property. The most likely contested properties for the purposes of this action are located in France. While Claude argues that both parties are permanent legal residents of the United States, he seems to overlook the fact that both parties are also French citizens and that Danielle has not resided in Illinois since November 2008. Accordingly, this matter has stronger ties to France than to Illinois.

¶ 58    Second, the unfairness of imposing trial expenses and the burden of jury duty on residents of a forum that has little connection to the litigation favors transfer. Although this is not a jury matter, Illinois has such minimal ties to this case that it could be considered unfair to impose the expense of a trial on its citizens. See *Mather*, 408 Ill. App. 3d at 861. The parties are both French citizens who married in France and have no minor children. Although Claude owns property in Illinois and pays income and real estate tax in the State of Illinois, France has more of a connection to the issues expected to be litigated.

¶ 59    Third, comparative congestion in the respective courts is not a factor in this case where neither party presented evidence that there is less or more congestion in French courts. *Mather*, 408 Ill. App. 3d at 861; *Berbig v. Sears Roebuck & Co.*, 378 Ill. App. 3d 185, 189 (2007) ("court congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly"). Additionally, our supreme court has held that "[w]hen deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket." *Langenhorst*, 219 Ill. 2d at 451. As a result, we cannot say that the trial court erred in giving no weight to this factor. *Mather*, 408 Ill. App. 3d at 861.

¶ 60    In light of this evidence, the trial court did not abuse its discretion in finding that the public interest factors strongly favor transfer to France.

¶ 61    After considering the private and public interest factors, the court was required to balance these factors without emphasizing any one factor. *Langenhorst*, 219 Ill. 2d at 443. On review, we will reverse the trial court's decision only if the court abused its discretion. *Mather*, 408 Ill. App. 3d at 862.

¶ 62    Here, we find that the trial court did not abuse its discretion in balancing the relevant factors. The trial court properly found that Claude's choice of forum merited substantial deference, despite the fact that he owns property in both Illinois and France. The court did not err in finding that the private and public interest factors weighed strongly in favor of transfer. *Mather*, 408 Ill. App. 3d at 862; *Langenhorst*, 219 Ill. 2d at 448; *Vivas*, 392 Ill. App. 3d at 663.

¶ 63    In reaching this conclusion, we reject Claude's argument that the court's ruling deprived him of his constitutional right to obtain a remedy in a court of law. The record shows the court dismissed Claude's petition pursuant to the conditions set forth in Rule 187(c)(2). Those conditions are:

> "(i) [I]f [Claude] elects to file the action in another forum within six months of the dismissal order, [Danielle] shall accept service of process from that court; and

> (ii) if the statute of limitations has run in the other forum, [Danielle] shall waive that defense.

> If [Danielle] refuses to abide by these conditions, the cause shall be reinstated for further proceedings in the court in which the dismissal was granted. If the court in the other forum refuses to accept jurisdiction, [Claude] may, within 30 days of the final order refusing jurisdiction, reinstate the action in the [circuit court of Cook County]."

See Ill. S. Ct. R. 187(c)(2)(i), (ii) (eff. Aug. 1, 1986).

¶ 64    The doctrine of *forum non conveniens* contemplates a plaintiff's right to a remedy and provides that, in addition to having the power to hear the case, the alternative forum must also afford the plaintiff an adequate remedy. *Stonnell*, 132 Ill. App. 3d at 1045-46. However, the alternative forum need not provide the exact same remedy and may not be circumvented because foreign law may be less favorable. *Philips Electronics*, 312 Ill. App. 3d at 1085. Rather, the alternative forum may be avoided when "the application of the foreign law presents a danger that plaintiffs would be deprived of any remedy or treated unfairly." *Phillips Electronics*, 312 Ill. App. 3d at 1085. Here, there is no reason to believe that French

-13-

law presents such a danger. This is especially so where Claude has twice before been awarded a divorce under French law. Therefore, the trial court did not violate Claude's constitutional rights when it dismissed his petition.

¶ 65                                   CONCLUSION

¶ 66      For the reasons stated, we affirm the trial court's order granting Danielle's motion to dismiss Claude's petition on *forum non conveniens* grounds.

¶ 67      Affirmed.