# Illinois Official Reports

## Appellate Court

---

### *Doe v. Hyatt Hotels Corp.*, 2021 IL App (1st) 201216

---

| | |
|---|---|
| Appellate Court Caption | JANE DOE, Plaintiff-Appellee, v. HYATT HOTELS CORPORATION and HYATT INTERNATIONAL CORPORATION, Defendants-Appellants. |
| District & No. | First District, First Division<br>No. 1-20-1216 |
| Filed | August 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-4839; the Hon. Cassandra Lewis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Edward B. Ruff III, Mary Helen Cronin, and Scott L. Howie, of Pretzel & Stouffer Chtrd., of Chicago, for appellants.<br><br>Thomas A. Demetrio and William T. Gibbs, of Corboy & Demetrio, P.C., of Chicago, and Wendy R. Fleishman and Daniel E. Seltz, of Lieff Cabraser Heimann & Bernstein, LLP, of New York, New York, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pierce and Coghlan concurred in the judgment and opinion. |

¶ 1        Hyatt Hotels Corporation and Hyatt International Corporation (collectively, Hyatt) appeal the denial of their *forum non conveniens* motion to dismiss. Jane Doe sued Hyatt for negligence, breach of contract, fraud, infliction of emotional distress, and violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)). Both defendants are Delaware corporations with their principal places of business in Illinois. We allowed Hyatt's leave to appeal under Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which provides for "Interlocutory Appeals by Permission."

¶ 2        We hold the trial court properly exercised its discretion in concluding the balance of private and public interest factors did not strongly favor transfer to Turkey.

¶ 3                                Background

¶ 4        Plaintiff Jane Doe is a Minnesota resident. She claims that in May 2014, while staying at Grand Hyatt Istanbul, a Gaia Spa massage therapist sexually assaulted her. Doe brought a personal injury action against Hyatt, asserting liability for negligence, breach of contract, fraud, infliction of emotional distress, and violation of the Consumer Fraud Act.

¶ 5        Doe claims she booked her stay because Hyatt had advertised Grand Hyatt Istanbul under its signature brand as a safe and secure hotel. Doe wanted to stay in a well-known, respectable American hotel chain while traveling to an unfamiliar country and relied on Hyatt's representations of its hotels' safety. Before booking, she spoke by phone with a United States-based Hyatt representative about Grand Hyatt Istanbul's safety. Hyatt's representative never advised her that Grand Hyatt Istanbul constituted a separate entity from either Hyatt corporation. According to Doe, Hyatt's websites represented "that the Grand Hyatt Istanbul is, in all respects, a part of the Hyatt brand and chain of hotels and subject to the safety and security standards of a United States hotel."

¶ 6        Doe asserts Hyatt's liability based on misrepresentations she claims Hyatt made to her— conduct that took place in Illinois, where Hyatt maintains its headquarters and principal place of business. Her complaint alleges Hyatt advertised Grand Hyatt Istanbul hotel and Gaia Spa on its centralized, United States-based website and represented it as a premier Hyatt property. Hyatt's 1-800 reservation line operates in the United States, and the "information and technology systems related to marketing and reservations are based and developed in Illinois." She claims (i) Hyatt misled United States consumers by representing it has direct control of all its hotels' operations and management, including those of its subsidiaries; (ii) Hyatt developed and maintained hiring, personnel, safety, security, and training policies and procedures at its Illinois corporate headquarters; and (iii) Hyatt did nothing after its officers learned of another United States national's earlier sexual assault at Grand Hyatt Istanbul.

¶ 7        But for Hyatt's Illinois-based representations—Doe claims—she would not have stayed at the Grand Hyatt Istanbul and would not have suffered the sexual assault she alleges its employee committed.

¶ 8        Hyatt moved to dismiss on *forum non conveniens* grounds. Hyatt denies responsibility for the alleged actions of a Grand Hyatt Istanbul employee. Instead, Hyatt blames a Turkish corporation, Göktrans Turizm ve Tic A.Ş, which owns and operates the hotel and employed the alleged perpetrator. Hyatt states that another legal entity based in Zurich, Switzerland,

Hyatt International (Europe Africa Middle East) LLC, contracted with Göktrans Turizm to manage the hotel's day-to-day operations. According to Hyatt, the management agreement provides that Göktrans Turizm employs all Grand Hyatt Istanbul staff.

¶ 9    Hyatt notes nine tiers of corporate entities separating Hyatt Hotels Corporation from Hyatt International (Europe Africa Middle East) LLC, and seven tiers of entities separating Hyatt International Corporation from Hyatt International (Europe Africa Middle East) LLC. Hyatt says Doe's cause of action arose "from an incident occurring exclusively in Istanbul, Turkey."

¶ 10    Hyatt argues this lawsuit's connection to Cook County "is far too attenuated" to litigate here. Instead, based on the affidavit of a Turkish attorney, Hyatt proposed Turkey as an available and adequate alternative forum and contended the private and public interest factors under the *forum non conveniens* analysis favor transfer.

¶ 11    In denying Hyatt's motion, the trial court balanced the private and public interest factors enunciated in *Jones v. Searle Laboratories*, 93 Ill. 2d 366 (1982). It concluded the factors did not strongly favor transfer and that Hyatt failed to show Turkey's courts would "better serve the convenience of the parties and the [ends] of justice."

¶ 12    Among the private interest factors, the court considered (i) the location of key witnesses, dispersed among Illinois, other United States jurisdictions, and outside the United States; (ii) the travel costs of American witnesses to Turkey against foreign witnesses' travel costs to Illinois; (iii) the documentary evidence both here and abroad; and (iv) the necessity of the trier of fact visiting the site of the alleged sexual assault.

¶ 13    The court also considered public interest factors and concluded there was no need to apply foreign law and Cook County jurors have an interest in the outcome. Finally, the court noted Turkish courts had suspended operations due to the COVID-19 pandemic.

¶ 14    Hyatt petitioned for leave to appeal the order denying its motion, which we granted.

¶ 15                                    Standard of Review

¶ 16    We review denial of a *forum non conveniens* motion for abuse of discretion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441-42 (2006) (citing *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176-77 (2003)). "A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Id.* at 442.

¶ 17                                        Analysis

¶ 18    Illinois's forum statute provides that an action must commence either "(1) in the county of residence of any defendant who is joined in good faith and with probable cause" or "(2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2020). A court with personal and subject-matter jurisdiction may decline to hear a case under the *forum non conveniens* doctrine when trial in another forum "would be more convenient and would better serve the ends of justice." *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991). This doctrine stems from " 'considerations of fundamental fairness and sensible and effective judicial administration.' " *Id.* (quoting *Adkins v. Chicago, Rock Island & Pacific R.R. Co.*, 54 Ill. 2d 511, 514 (1973)).

¶ 19    Dismissal under the *forum non conveniens* doctrine occurs in exceptional circumstances. *Langenhorst*, 219 Ill. 2d at 442 (collecting cases). When venue is proper, the defendant must

show that " 'the inconvenience factors' " attached to the plaintiff's chosen forum " 'greatly outweigh' " the plaintiff's " 'substantial right to try the case in the chosen forum.' " *First American Bank v. Guerine*, 198 Ill. 2d 511, 520 (2002) (quoting *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36 (1994)).

¶ 20    Courts usually give substantial deference to a plaintiff's right to select a forum. *Dawdy*, 207 Ill. 2d at 173. A nonresident plaintiff's choice of forum receives less deference, particularly if the alleged negligence did not happen there. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990); *Peile*, 163 Ill. 2d at 337-38.

¶ 21    As an initial matter, the trial court noted "[t]he plaintiff's choice of forum is afforded some deference but not as much as it would have been ha[d] she resided in Illinois." Thus, the trial court properly took account of nonresident Doe's chosen forum, contrary to Hyatt's claims.

¶ 22    Hyatt suggests filing in Illinois constituted strategic "forum shopping." Whether true, "courts may not consider this practice in a *forum non conveniens* analysis." *Dawdy*, 207 Ill. 2d at 175. Courts limit their inquiry into whether the relevant private and public interest factors strongly favor transfer from the chosen forum to another available and adequate alternative.

¶ 23                    *Available and Adequate Alternative Forum*

¶ 24    Dismissal of the action on a *forum non conveniens* motion presupposes an available and adequate alternative forum exists. See *Stonnell v. International Harvester Co.*, 132 Ill. App. 3d 1043, 1044 (1985). An "available" forum means "a forum with the capacity *** to obtain jurisdiction and grant relief." (Internal quotation marks omitted.) *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 39 (citing *Fender v. St. Louis Southwestern Ry. Co.*, 49 Ill. 2d 1, 5 (1971)). An alternative forum outside the United States "need not provide the exact same remedy and may not be circumvented because foreign law may be less favorable" to the plaintiff. *In re Marriage of Ricard*, 2012 IL App (1st) 111757, ¶ 64 (citing *Philips Electronics N.V. v. New Hampshire Insurance Co.*, 312 Ill. App. 3d 1070, 1085 (2000)). But the alternative forum will be deemed inadequate when " 'the application of the foreign law presents a danger that plaintiffs would be deprived of any remedy or treated unfairly.' " *Id.* (quoting *Philips Electronics*, 312 Ill. App. 3d at 1085).

¶ 25    The trial court did not expressly find Turkey was an available and adequate alternative forum. Rather, it alluded to the impossibility of filing in Turkish courts given their suspension of legal proceedings due to COVID-19. Hyatt maintains this "temporary" condition should not have affected the court's analysis because, when this matter reaches trial, "the judicial disruptions caused by the pandemic will be distant memories." Perhaps. But the trial court did not abuse its discretion by considering known conditions: courts in Turkey had been shut down and could not grant relief.

¶ 26    Even if we accept Hyatt's contention that Turkish courts may soon reopen, this alone would not transform Turkey into an adequate alternative forum. Hyatt does not show that Turkish courts would afford Doe a sufficient remedy or treat her fairly, both necessary preconditions to transfer abroad. See *id.* (citing *Philips Electronics*, 312 Ill. App. 3d at 1085).

¶ 27    Hyatt states Doe cannot avoid litigating in Turkey because she prefers a more lucrative damage award. But Hyatt does not attempt to show how Turkey's legal system would afford Doe a meaningful damages award that adequately compensates her alleged injuries. Hyatt provides no benchmarks for victims' monetary damages in any comparable civil negligence

- 4 -

claims, let alone damages paid to victims of sexual assaults. Hyatt's affidavit of a Turkish attorney makes the unremarkable statement that Turkish law allows claimants to seek their moral and material damages resulting from another's negligent or willful actions.

¶ 28    Furthermore, Hyatt has no response to Doe's descriptions of extreme delays in judicial processes after the 2016 coup attempt in Turkey, let alone Turkish courts' restrictive discovery rules, trial procedures, and damage rules. Hyatt ignores the United States State Department's recommendation at the time of its motion—pre-COVID-19—that United States citizens reconsider nonessential travel to Turkey due to terrorism and arbitrary detentions. Doe also raised concerns of endemic judicial corruption and underprosecution of violence against women as barriers to fair treatment in Turkey. Hyatt stayed silent on these issues.

¶ 29    The alternative forum need not afford Doe identical procedures or equivalent remedies. See *id.* Notwithstanding, Hyatt must show Doe has reasonable access to a substantially fair hearing and adequate remedy. Against the evidence Doe provided in briefing and oral argument, Hyatt failed to carry its burden on this threshold showing.

¶ 30    That Turkey is not an available and adequate alternative forum for this dispute was reasonable.

¶ 31                                          *Private Interest Factors*

¶ 32    When an available and adequate alternative forum exists, the court balances all relevant private and public interest factors in a *forum non conveniens* motion, considering each case "as unique on its facts." *Langenhorst*, 219 Ill. 2d at 443 (citing *Dawdy* 207 Ill. 2d at 175-76, and *Satkowiak v. Chesapeake & Ohio Ry. Co.*, 106 Ill. 2d 224, 228 (1985)). The private interest factors include " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Id.* (quoting *Guerine*, 198 Ill. 2d at 516).

¶ 33    Though the trial court need only have concluded that Turkey was not an available and adequate alternative forum, it properly exercised its discretion in analyzing the relevant private and public interest factors. Regarding the private interest factors, the trial court considered the relative convenience of the parties when witnesses reside in multiple United States jurisdictions and Turkey. The trial court concluded, without explanation, "[t]he cost of travel of witnesses to Turkey would likely exceed the cost of travel of the foreign witnesses to Illinois."

¶ 34    The trial court also discussed the availability of evidence. Witnesses' testimonial evidence would require some travel for most witnesses, whether to Illinois or Turkey. Documentary evidence, too, "lies on both sides of the Atlantic." Finally, the court determined an Illinois jury could not visit the site of the alleged assault but said: "it has not been established [that] the viewing of the site is essential for resolution of this case." The court mentioned no other private interest factors.

¶ 35    Hyatt argues all private interest factors strongly favor transfer to Turkey and the trial court's "generalized conclusion" to the contrary was unreasonable. The trial court's explanations may have been short, but that does not necessarily make its conclusions unreasonable. We have approved similar conclusions when evidence and witnesses were dispersed among multiple jurisdictions, both domestic and international. See *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 658-59 (2009) ("Observing correctly that potential witnesses

and evidence were scattered among different states and countries, the trial court concluded that this factor did not tilt in favor of any one forum. We cannot find that this conclusion was an abuse of discretion.").

¶ 36 Regarding the cost of witnesses traveling from multiple U.S. jurisdictions to Turkey exceeding the cost of witnesses traveling from Turkey to Illinois, Doe names 11 witnesses residing in several United States jurisdictions and whose testimony she will solicit. She also names Hyatt's CEO as a witness, making at least 12 United States-based witnesses (with at least a few in Illinois). She indicated no plans to call anyone from Turkey.

¶ 37 Hyatt says it needs at least 14 Turkish residents to testify as "occurrence witnesses" to fairly defend itself against Doe's sexual assault allegation. Hyatt argues that "since most of the occurrence witnesses are Turkish nationals, there would be much greater overall travel—at a much greater corresponding expense—if those persons must come to Illinois."

¶ 38 Hyatt maintains that these witnesses are needed to prove the assault did not happen and travel to Chicago to testify will be inconvenient, if not impossible to arrange. But Doe has the burden of proving the sexual assault. Hyatt does not have to produce witnesses to testify; Doe does. If Doe can produce witnesses from Turkey to advance her claims, then Hyatt will have the opportunity to cross-examine them in defense. But Doe says her claims rest on United States-based witnesses' testimony. She also alleges Hyatt possesses electronic documentary evidence in its Illinois servers that, if it exists, corroborates her witnesses' testimony. All of this goes to the merits, which are irrelevant to our decision.

¶ 39 To pursue her claims against Hyatt in Turkey, Doe would have to bear the travel costs from the United States to Turkey for all witnesses whose testimony she wants. She may even have to travel multiple times. Chicago-based Hyatt would also have to spend more to defend itself in Turkey. The trial court's private interest factor analysis may have reasonably weighed the parties' and witnesses' relative travel costs in this light.

¶ 40 Regarding the trial court's assessment that viewing the site was not "essential," Hyatt incorrectly argues the trial court cannot determine a site visit's necessity under the *forum non conveniens* analysis. In citing *Fennell*, Hyatt argues that the trial court should have considered the "mere possibility" viewing the site weighed in favor of transfer. See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 37 ("This convenience factor is not concerned with the *necessity* of viewing the premises, but rather is concerned with the *possibility* of a view, if appropriate." (Emphases in original.)).

¶ 41 But Hyatt mischaracterizes *Fennell* and the considerable discretion our supreme court affords the trial court to decide the appropriateness or necessity of a site visit to resolve a case. As our supreme court observed, "the appropriateness or necessity of viewing the premises is a decision left within the discretion of the circuit court at trial." *Id.* In *Fennell*, the trial court failed to address the propriety or necessity of a site visit to an accident scene in Mississippi as a factor in its *forum non conveniens* analysis. *Id.* ¶ 38. In its review of the denial of the *forum non conveniens* motion, the supreme court did not mandate that the mere possibility of a site visit's appropriateness called for a forum transfer, as Hyatt suggests. See *id.* ¶ 39.

¶ 42 When the trial court fails to expressly determine a site visit's necessity, the reviewing court may consider its possibility in the analysis. See *id.* ("If the instant case were tried in St. Clair County, and the circuit court determines that viewing the premises is appropriate or necessary, it would be irrational for a jury composed of St. Clair County residents to travel to Mississippi

or Louisiana to view the premises, when such viewing could be accomplished more expeditiously if this case were tried in Mississippi.").

¶ 43    Here, the trial court did not distort—as Hyatt argues—the evidentiary convenience factor of a site visit's necessity in its private interest factor analysis. Indeed, the trial court expressly considered this, as *Fennell* approves. See *id.* ¶ 37. The trial court decided a site visit was not essential, a reasonable conclusion well within its discretion.

¶ 44    That Doe's theory of liability requires a site visit presents a classic red herring. First, Hyatt never shows that a Turkish tribunal could conduct a site visit nor why the possibility of a site visit makes Turkey a comparatively advantageous forum. Second, as the trial court recognized, the spa's structural and acoustic qualities are not essential to Doe's theory of liability. Though her complaint described the spa's physical layout and its marble walls, this is relevant only to determine whether her calls for help might have been heard after the alleged attack begun. Seeing the spa's physical characteristics would neither tend to prove nor disprove Doe's allegations. Finally, as Doe observes, Hyatt could easily produce photographs, video, or graphic representation of the spa's layout if necessary to illustrate the physical context.

¶ 45    Next, Hyatt argues the trial court failed to weigh other practical considerations that would make trial in Turkey more appropriate, which is true. Hyatt points to its inability to join Göktrans Turizm as a third-party defendant, a consideration that the trial court did not raise. Hyatt thus reveals explicitly what it has suggested implicitly: Doe is not suing in the wrong forum; she is suing the wrong defendants. Hyatt says, "the plaintiff has not included [Göktrans Turizm], the Turkish corporation that owns the hotel, as a defendant—even though [Göktrans Turizm] employed the person who allegedly committed the sexual assault and may have been chiefly to blame for the incident in other ways." Transfer to Turkey solves this problem, Hyatt says, because Hyatt can then join Göktrans Turizm as a third-party defendant.

¶ 46    Hyatt says its inability to join Göktrans Turizm as a third-party defendant in Illinois is critical to the *forum non conveniens* analysis. But Hyatt refused to answer whether existing agreements would allow Hyatt to pursue potential third-party claims against unnamed parties, claiming this information was irrelevant to the *forum non conveniens* motion. Hyatt cannot have it both ways. Hyatt cites *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015), to support its argument that a third-party defendant's joinder is a private interest factor that strongly favors transfer to a foreign jurisdiction. But Hyatt misstates *Fischer*.

¶ 47    The district court in *Fischer* had already dismissed Foreign Sovereign Immunities Act of 1976 (FSIA) (see 28 U.S.C. § 1603(b), 1604 (2012)) claims against two of three foreign codefendants for lack of subject-matter and personal jurisdiction. *Fischer*, 777 F.3d at 869-70. The Seventh Circuit affirmed the district court's subsequent dismissal of the third codefendant on *forum non conveniens* grounds. *Id.* at 869-71. Critically, plaintiffs sought to hold all three foreign codefendants jointly and severally liable for the alleged FSIA violation, and litigation against the other two dismissed codefendants would continue in Hungary. *Id.* at 870. In this context, the court appropriately considered the convenience of holding one joint trial in Hungary for all three foreign codefendants as a private interest factor favoring transfer.

¶ 48    Here, Doe holds Hyatt alone liable for her alleged injuries, not Göktrans Turizm, which she claims is Hyatt's "joint employer[ ] and agent[ ]." Further, her claims rest on conduct she alleges emanated from Hyatt's Chicago headquarters. While Hyatt vigorously contests these allegations, they go to the merits of Doe's claims and, to repeat, are irrelevant to our decision.

A potential future contribution claim Hyatt may or may not seek from Göktrans Turizm makes no difference to continuing this lawsuit in Doe's chosen forum.

¶ 49     Hyatt fails to carry its considerable burden to show the trial court abused its discretion in concluding that the relevant private interest factors do not strongly favor transfer.

¶ 50                                    *Public Interest Factors*

¶ 51     We next address the public interest factors, which the court weighs together with the private interest factors. The public interest factors include "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17).

¶ 52     The trial court considered the public interest factors and concluded that a Cook County judge "is able to hear this case and the jurors in Cook County have some interest in the outcome of this case." This conclusion aligns with the three public interest factors: (i) the controversy is sufficiently local, (ii) the litigation has enough connection to Cook County for jurors to hear it, and (iii) hearing the case in Cook County causes no administrative difficulties.

¶ 53     Hyatt would have us hold this conclusion unreasonable. Hyatt argues that Turkish citizens have the primary interest—and that Cook County citizens have no meaningful interest at all. Hyatt focuses on the physical location of the alleged sexual assault. Generally, litigation should ensue in the forum where the injury happened, as Illinois courts have held. *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 838 (1998) (citing *Brummett v. Wepfer Marine, Inc.*, 111 Ill. 2d 495 (1986)). But where American corporations' conduct and business operations lead to United States citizens' injuries abroad, we have held that our citizens have an interest in how these corporations' activities impact public safety. See *Vivas*, 392 Ill. App. 3d at 661 ("Americans have an interest in ensuring the safety of the products that its corporations build and ship throughout the world, particularly when one of those corporations has its world headquarters here.").

¶ 54     Doe claims Hyatt's corporate conduct in Illinois led to her alleged injuries, even though the alleged sexual assault happened in Turkey. Doe connects Hyatt's representations and policies regarding its hotels' safety and security worldwide directly to Hyatt's liability for her injuries. Americans, including Cook County residents, travel abroad and stay in Hyatt-branded international hotels in reliance on its corporate brand reputation and representations regarding safety and security.

¶ 55     Because Cook County residents have an interest, it follows that the case remain here. See *Fennell*, 2012 IL 113812, ¶ 46 ("If Illinois had any relevant or practical connection with this litigation, then it would have an interest in providing a forum."). While not dispositive, Hyatt maintains its headquarters and principal place of business in Cook County. See *Vivas*, 392 Ill. App. 3d at 661 (citing *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 173 (2005)). And Doe alleges that Hyatt's corporate presence and actions in Illinois created liability for her alleged injuries in one of its signature international hotels. Again, we cannot say the trial court abused its discretion.

¶ 56     Next, Hyatt contends that the trial court erred when it found no need to apply foreign law. In Hyatt's view, Turkish law controls all substantive issues. This makes little sense. Hyatt has

already lost its motion to dismiss Doe's Consumer Fraud Act claim. Hyatt downplays the importance of the Consumer Fraud Act claim, arguing she appended it as an afterthought. So what? The claim continues, and Illinois courts have an interest in adjudicating Illinois statutes.

¶ 57 Regarding Doe's common-law claims, Hyatt has failed to show why Illinois law cannot apply. Hyatt cites section 145(2) of the Second Restatement of Conflict of Laws as referenced in *Quaid v. Baxter Healthcare Corp.*, 392 Ill. App. 3d 757, 774 (2009): "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered." *Id.* (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)). Hyatt offers no reason why the trial court unreasonably determined that Illinois law would control Doe's claims under the second, third, and fourth factors. And although a factor in deciding a *forum non conveniens* motion, choice-of-law issues "are not usually dispositive." *Vivas*, 392 Ill. App. 3d at 662 (citing *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 837 (2006)).

¶ 58 Finally, Hyatt waived argument before the trial court regarding the relative congestion of Cook County courts and the administrative burden of adding litigation to its dockets. Hyatt cited no evidence that Istanbul courts have comparatively less congestion. Absent rebutting evidence, " '[w]hen deciding *forum non conveniens* issues, the trial court is in the better position to assess the burdens on its own docket.' " *Id.* at 661 (quoting *Langenhorst*, 219 Ill. 2d at 451).

¶ 59 The trial court properly exercised its discretion in finding the public interest factors did not strongly favor transfer to Turkey.

¶ 60 *Balancing the Factors*

¶ 61 The trial court balances the private and public interest factors in deciding a *forum non conveniens* motion without emphasizing one factor. *Gridley*, 217 Ill. 2d at 169-70; *Langenhorst*, 219 Ill. 2d at 443. "On review, the trial court's decision will be reversed only if *** the court abused its discretion in balancing the relevant factors." *Dawdy*, 207 Ill. 2d at 176-77. Hyatt has not demonstrated an abuse of discretion.

¶ 62 Affirmed.