2024 IL App (1st) 230095

Nos. 1-23-0095 and 1-23-0258 (cons.)

Opinion filed February 14, 2024

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LEHRAM CAPITAL INVESTMENTS, LTD, and DANIEL RODRIGUEZ, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 22 L 6704 |
| BAKER & MCKENZIE INTERNATIONAL; BAKER MCKENZIE; BAKER & MCKENZIE LLP; and BAKER & MCKENZIE, | ) ) ) ) ) | |
| Defendants | ) ) | Honorable James E. Snyder, |
| (Baker & McKenzie, LLP, Defendant-Appellant). | ) ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice R. Van Tine concurred in the judgment and opinion.
Justice D.B. Walker dissented, with opinion.

**OPINION**

¶ 1    Plaintiffs, Lehram Capital Investments, Ltd. (Lehram) and Daniel Rodriguez, sued

defendants, Baker & McKenzie International, Baker McKenzie, Baker & McKenzie, and Baker &

McKenzie, LLP (Baker LLP), for legal malpractice. Although plaintiffs sued four defendants, only

Baker LLP was served and answered the complaint.

¶ 2    Baker LLP appeals the denial of its *forum non conveniens* motion to dismiss. We allowed Baker LLP's petition for leave to appeal under Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020), which provides for interlocutory appeals by permission. On appeal, Baker LLP argues that the trial court abused its discretion by concluding that the balance of private and public interest factors did not strongly favor transfer to London.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                              I. BACKGROUND

¶ 5    Plaintiff Lehram is a London business and plaintiff Rodriguez is a Spanish citizen who lives in Europe. Plaintiffs alleged that defendants were an international law firm with its principal place of business in Chicago. Plaintiffs also alleged that defendants operated as one unified body of thousands of lawyers in dozens of domestic and international offices, holding themselves out to the public as "Baker & McKenzie," and registered in each jurisdiction according to that jurisdiction's specific requirements. Plaintiffs had hired defendants to perform legal work in many countries, including the United States, for plaintiffs' various international legal needs, based on defendants' marketing and representations that it was a one-stop, global firm suited in particular to Rodriguez's international businesses.

¶ 6    Plaintiffs alleged that they purchased a coal mine in Kemerovo, Russia in 2013. Shortly after plaintiffs' acquisition of the mine, a director of Lehram, Igor Rudyk, was arrested by Russian immigration authorities when he refused the Kemerovo deputy governor's request to turnover plaintiffs' ownership of the mine. Rudyk was detained, interrogated, and put in a Russian prison. After several days, he was taken in handcuffs to again meet with the deputy governor and was

presented with documents that purported to transfer plaintiffs' ownership interests to an entity controlled by the Shchukin family, who were an organized crime group known to have strong ties to the deputy governor and governor of Kemerovo. Plaintiffs alleged that Rudyk was coerced into signing the documents.

¶ 7    According to his affidavit, Rodriguez in 2014 raised the issue of the unlawful seizure of Lehram's shares of the mine with a Swiss partner of defendants' Geneva office, who referred Rodriguez to defendants' London office. There, London partners Andrew Keltie and Charles Thompson and associate Ekaterina Finkel conducted an initial assessment of the legal options to recover the assets. These London attorneys recommended that plaintiffs file a complaint in Russia to recover the assets and introduced plaintiffs to their partners in Moscow, Baker & McKenzie CIS-Limited (Baker CIS). Plaintiffs alleged that they retained Baker CIS in January 2016 to help them recover ownership of the mine.

¶ 8    In November 2018, plaintiffs sued defendants in Cook County for legal malpractice, alleging that they (1) filed plaintiffs' underlying claim in the wrong court in Russia, causing the claim to be dismissed on statute of limitations grounds, and (2) introduced Rodriguez to a Russian criminal group, putting the lives of plaintiffs and their families at risk. Specifically, plaintiffs alleged that defendants agreed to represent them in seeking to recover ownership of the mine but failed to disclose several conflicts of interest, such as defendants' concurrent representation of certain Russian government-owned interests and other Russian Federation businesses. When defendants filed an action challenging the notary's signature on the documents Rudyk allegedly was forced to sign, defendants filed the action in the civil court, which had a 10-day statute of

limitations, instead of filing it in the Russian arbitration court, which had a three-year statute of limitations. Ultimately, plaintiffs' claim to recover ownership of the mine was dismissed as untimely.

¶ 9    Furthermore, plaintiffs alleged that defendants also proposed that plaintiffs meet with another client of defendants, Gavril Yushvaev, who also had his mine ownership forcibly transferred to the Shchukin family but successfully negotiated a resolution that permitted him to regain control of his mine. Defendants introduced plaintiffs to Yushvaev's agent, Anton Tsygankov, who would attempt to negotiate for plaintiffs with Dmitry Anatolievich Tsvetkov, a Shchukin family operative. Tsygankov advised plaintiffs to file a petition to initiate a criminal investigation against the Shchukin family, pay him $300,000, and assign 50% of plaintiffs' ownership in the mine to Yushvaev. Despite encouragement from a partner of defendants to accept the terms, Rodriguez rejected the scheme. Afterwards, members of Lehram and their families began receiving death threats and threats of fabricated criminal prosecutions. Plaintiffs claimed that Tsvetkov attempted to intimidate Lehram representatives so they would cease attempts to recover the mine. According to plaintiffs, Tsvetkov disclosed private information about Lehram and Rodriguez that was known only to defendants. When plaintiffs reported the threats to the law firm, it presented plaintiffs with a waiver that sought a universal release of every partner of the global Baker McKenzie entity. Plaintiffs refused to sign the waiver. Plaintiffs claimed that these events and others constituted a breach of the standard of care and duty that attorneys owe their clients and proximately caused plaintiffs to incur damages greater than $200 million.

¶ 10    Among defendant Baker LLP's defenses, it disputes plaintiffs' description of named defendants as having legal relationships or bases of liability for each other. Baker LLP asserts that plaintiffs engaged Baker CIS and not Baker LLP. Baker LLP contends that no attorneys of Baker LLP located in Chicago or anywhere else in the United States participated in the Russian litigation regarding the mine.

¶ 11    Initially, Baker LLP argued that the case should be transferred to Moscow, and the parties engaged in *forum non conveniens* discovery. After the *forum non conveniens* motion was fully briefed, the trial court denied it, finding that Baker LLP failed to show that the private and public interest factors weighed so strongly in favor of Moscow that plaintiffs' right to select Chicago as the forum should be overturned. The court also found that Moscow was not a proper forum and Baker LLP did not show that plaintiffs would have reasonable access to a substantially fair hearing and adequate remedy.

¶ 12    Baker LLP appealed (case No. 1-21-1054), and plaintiffs moved for summary affirmance, noting, *inter alia*, that Russia's invasion of Ukraine, the evacuation of embassies, travel advisories, and the unstable geopolitical climate reinforced the trial court's decision to deny Baker LLP's motion to transfer the case to Moscow. In response, Baker LLP argued that Moscow was still the most convenient forum for litigation. In the alternative, Baker LLP asked this court to stay the appeal or remand the matter so Baker LLP could supplement its *forum non conveniens* motion to dismiss for consideration of London as an alternative forum. This court granted Baker LLP's request to supplement its motion.

¶ 13    In October 2022, Baker LLP argued in its supplemental motion before the trial court that London was a more convenient forum than Cook County for plaintiffs' legal malpractice case. On December 30, 2022, the trial court denied Baker LLP's *forum non conveniens* motion, concluding that the law firm had not met its burden to show that the private and public interest factors weighed so strongly in defendants' favor that plaintiffs' right to select the forum should be overturned. Baker LLP moved for reconsideration and to strike Rodriguez's affidavit.

¶ 14    In January 2023, the trial court denied Baker LLP's motion for reconsideration, but granted in part and denied in part its motion to strike the affidavit. Specifically, the trial court denied the motion to strike certain statements in the affidavit—*i.e.*, paragraphs 1-11, 21, 26 and 34—which were based on Rodriguez's claim of personal knowledge regarding threats to his safety in England, his payments to defendants' Cook County bank account, a response to his Freedom of Information Act request regarding the Cook County attorneys practicing under the name Baker & McKenzie, and his receipt of legal advice from Baker & McKenzie attorneys across the world. However, certain statements in the affidavit were not based on Rodriguez's personal knowledge—*i.e.*, paragraphs 12-20, 22-25, 27-33. Those statements, which appeared to be efforts to authenticate public records of the Cook County Clerk's Office, were stricken.

¶ 15    Baker LLP pursued this appeal.

¶ 16                                    II. ANALYSIS

¶ 17    We review the denial of a *forum non conveniens* motion for an abuse of discretion. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441-42 (2006). "A circuit court abuses

its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Id.* at 442.

¶ 18     Illinois's forum statute provides that an action must commence either "(1) in the county of residence of any defendant who is joined in good faith and with probable cause" or "(2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2018). A court with personal and subject-matter jurisdiction may decline to hear a case under the *forum non conveniens* doctrine when trial in another forum "would be more convenient and would better serve the ends of justice." *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991); see also *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947) ("The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."). This doctrine stems from " 'considerations of fundamental fairness and sensible and effective judicial administration.' " *Vinson*, 144 Ill. 2d at 310 (quoting *Adkins v. Chicago, Rock Island & Pacific R.R. Co.*, 54 Ill. 2d 511, 514 (1973)).

¶ 19     Dismissal under the *forum non conveniens* doctrine occurs in exceptional circumstances. *Langenhorst*, 219 Ill. 2d at 442.

> "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." *Gulf Oil Corp.*, 330 U.S. at 508.

When venue is proper, the defendant must show that " 'the inconvenience factors' " attached to the plaintiff's chosen forum " 'greatly outweigh' " the plaintiff's " 'substantial right to try the case in the chosen forum.' " *First American Bank v. Guerine*, 198 Ill. 2d 511, 520 (2002) (quoting *Peile v. Skelgas, Inc.*, 163 Ill. 2d 323, 335-36 (1994)).

¶ 20    Courts usually give substantial deference to a plaintiff's right to select a forum. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 173 (2003). A nonresident plaintiff's choice of forum receives less deference, particularly if the alleged negligence did not happen there. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990); *Peile*, 163 Ill. 2d at 337-38.

¶ 21    As an initial matter, the trial court noted that plaintiffs' choice of forum was afforded some deference but not as much as it would have been if they had resided in Illinois. Thus, the trial court properly took account of nonresident plaintiffs' chosen forum.

¶ 22    Baker LLP suggests filing in Illinois constituted strategic "forum shopping." However, we recognize that "courts may not consider this practice in a *forum non conveniens* analysis." *Dawdy*, 207 Ill. 2d at 175. Courts limit their inquiry into whether the relevant private and public interest factors strongly favor transfer from the chosen forum to another available and adequate alternative.

¶ 23                      A. Available and Adequate Alternative Forum

¶ 24    Dismissal of the action on a *forum non conveniens* motion presupposes that an available and adequate alternative forum exists. See *Stonnell v. International Harvester Co.*, 132 Ill. App. 3d 1043, 1044 (1985). An "available" forum means "a forum with the capacity *** to obtain jurisdiction and grant relief." (Internal quotation marks omitted.) *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶ 39. An alternative forum outside the

United States "need not provide the exact same remedy and may not be circumvented because foreign law may be less favorable" to the plaintiff. *In re Marriage of Ricard*, 2012 IL App (1st) 111757, ¶ 64. But the alternative forum will be deemed inadequate when " 'the application of the foreign law presents a danger that plaintiffs would be deprived of any remedy or treated unfairly.' " *Id.* (quoting *Philips Electronics N.V. v. New Hampshire Insurance Co.*, 312 Ill. App. 3d 1070, 1085 (2000)).

¶ 25    Baker LLP argues that London is a substantially more appropriate forum and if the trial court had stricken the alleged incompetent assertions in Rodriguez's affidavit regarding his safety concerns, then plaintiffs would have failed to rebut the affidavit of Baker LLP's expert, London barrister Andrew Scott KC, who opined regarding the litigation of this case before the London High Court and its processes. According to Baker LLP, Scott's affidavit established that plaintiffs' alleged safety concerns about threats from the London-based Shchukin family posed no impediment because the London court could grant Rodriguez permission to testify by a video link. Baker LLP also argues that Rodriguez's general statements in his affidavit were insufficient to support his claims that an unnamed London metropolitan police officer advised him against travel to London and an unnamed senior officer of Spain's anti-organized crime police unit told him not to travel to London for his own safety. Also, although plaintiffs contended that English courts require a plaintiff to provide and post substantial security at the beginning of the case (similar to a bond), Baker LLP stated that it would forego this request if the forum was moved to London. Finally, Baker LLP argues that the trial court improperly considered the parties' jury trial demands, which Baker LLP contends are not part of the *forum non conveniens* analysis.

¶ 26    Plaintiffs respond that London is not an adequate forum for them based on judicial estoppel, the prohibitive costs, their right to a jury trial, and their safety concerns. First, plaintiffs argue that Baker LLP should be estopped from arguing that London is a more convenient forum because when Baker LLP argued that Moscow was an adequate, appropriate, and more convenient forum, Baker LLP had strategically argued that London was not a convenient alternate forum for this litigation since plaintiffs' legal malpractice claims did not challenge the conduct of any London attorneys, who thus were not relevant witnesses. Second, plaintiffs argue that London is not financially feasible for them because Lehram no longer has any assets and English courts may require the plaintiff to pay upfront security costs in the event the defendant wins the case and then is unable to collect its costs and attorney fees from the unsuccessful plaintiff. Third, plaintiffs argue that a trial in London, which would be determined by a judge rather than a jury, would create an injustice by impermissibly infringing upon plaintiffs' fundamental rights to a full remedy and a trial by jury. Fourth, plaintiffs argue that litigation in London risks plaintiffs' safety because the Shchukin family is based in London, and defendants previously acknowledged that the behavior of the Shchukin family was very similar to the methods used by organized criminal groups. Plaintiffs further asserted that Rodriguez has not traveled to London since the police there advised him not to do so, and there was no guarantee that the English courts would allow him to appear via video link.

¶ 27    We conclude that Baker LLP's criticisms of Rodriguez's affidavit are unavailing because the trial court did not give weight to Rodriguez's concerns about the safety of the London forum in the trial court's analysis. Baker LLP's criticism of the trial court's consideration of the

availability of a jury trial is also unfounded because the trial court found that, although plaintiffs' choice of venue, which honored all the parties' asserted right to a jury trial, was properly given some consideration, the absence of a right to a jury did not render the London forum unfair. The trial court stated that it had no doubt that the parties would have reasonable access to a substantially fair hearing and adequate remedy in the London High Court. See *In re Marriage of Ricard*, 2012 IL App (1st) 111757, ¶ 64 (the alternative forum need not afford plaintiffs identical procedures or equivalent remedies). Baker LLP was required to show that plaintiffs would have reasonable access to a substantially fair hearing and adequate remedy. Against the evidence plaintiffs provided in briefing and oral argument, the trial court's conclusion that Baker LLP carried its burden on this threshold showing that London was an available and adequate alternative forum for this dispute was reasonable.

¶ 28                    B. Private Interest Factors

¶ 29    Baker LLP argues the trial court misconstrued or ignored essential aspects of the record regarding the private factors analysis. Specifically, Baker LLP argues that the location of essential witnesses outside Illinois's subpoena power strongly favors London because no witnesses to the underlying events are located in Illinois and important witnesses are in London and Europe. For example, Baker LLP claims that (1) Shai Wade, plaintiffs' London-based successor counsel, may comment on the negligence allegations and causation issues, (2) Gervase MacGregor, plaintiffs' London-based damages expert, did the mine valuation assessment, (3) Tsvetkov, the alleged spokesperson for the Shchukin family, was present at a meeting where the ownership of the mine was discussed and is believed to currently be in London, (4) Tsygankov, an alleged Shchukin

family operative, was involved in negotiations with Rodriguez to recover the mine for Lehram but no evidence established Tsygankov's current location, (5) Andrew Keltie, Charles Thompson, and Ekaterina Finkel are essential witnesses and defendants' London-based attorneys, (6) Daniel Peregrina, a Swiss attorney of defendants, is necessary to testify regarding plaintiffs' theory of a common corporate relationship between Baker LLP and Baker CIS to Baker & McKenzie International, and (7) Alexander Gomonov, a former Baker CIS partner, and Denis Lim, a former Baker CIS attorney, are in Moscow, which is closer to London than Cook County. Baker LLP also argues that the location of the parties favors London because Baker LLP's location does not substantially link the litigation to Cook County, Lehram is in London, and Rodriguez is closer to London than he is to Cook County.

¶ 30    Plaintiffs argue that the private interest factors strongly favor Cook County because (1) defendants are headquartered in Cook County and hold themselves out as a global law firm with approximately 4000 attorneys in 69 offices in 40 countries, (2) Lehram has no physical office in England, has zero assets, and has no officers, managers, or employees in England, (3) Baker LLP's general counsel emeritus and senior counsel Edward Zulkey averred that he has access to all the firm's records, files, and information concerning the legal work its attorneys perform and was able to obtain all the information necessary to answer discovery by telephoning the Moscow office from Chicago, (4) Baker LLP has failed to provide any affidavits of any individuals attesting to the fact that they would not be able to testify in Chicago, (5) London would have no subpoena power over the Moscow-based attorneys, the testimony of defendants' London-based attorneys would not be relevant, and Baker LLP has been able to procure affidavits, documents, internal

communications, and other materials from its offices around the globe while litigating in Chicago, and (6) several essential witnesses who would establish defendants' global presence, structure, and responsibility for its global offices and attorneys reside in Cook County.

¶ 31 When an available and adequate alternative forum exists, the court balances all relevant private and public interest factors in a *forum non conveniens* motion, considering each case "as unique on its facts." *Langenhorst*, 219 Ill. 2d at 443. The private interest factors include " '(1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive.' " *Id.* (quoting *Guerine*, 198 Ill. 2d at 516). The third factor includes the availability of compulsory witnesses, the cost to obtain attendance of willing witnesses, and the ability to view the premises, if appropriate. *Guerine*, 198 Ill. 2d at 516.

¶ 32 The trial court properly exercised its discretion in analyzing the relevant private interest factors. The trial court considered the relative convenience of the parties when witnesses resided in London, Russia, and other international jurisdictions. The court concluded that neither Cook County nor London was a convenient forum because, even though Baker LLP was located in Chicago, Rodriguez and some witnesses were located outside the United States and the United Kingdom. Moreover, some witnesses were believed to be in Russia. The court found, however, that all the parties had been able to conduct litigation in Cook County and manage the inconveniences and expenses, having already produced affiants and experts from London and translated Russian documents. The court concluded that the cost of travel of the likely witnesses

to attend the trial was similarly expensive and inconvenient whether the trial was held in London or Cook County.

¶ 33    The trial court also discussed the availability of evidence. Although the real extent of the likely witnesses and evidence for the case was not yet known, most witnesses would have to travel, whether to Chicago or London. Although Baker LLP indicated that Baker CIS attorneys Alexander Gomonov and Roman Butenko had resided and worked in Moscow, their current firm affiliations were not clear, and Baker LLP indicated that Baker CIS no longer operated in Russia. Moreover, the documentary and testimonial evidence was more conveniently available now through electronic storage and transfer and through remote discovery and hearing proceedings, so physical distance was not necessarily a determinative factor. Also, Illinois courts regularly worked with documentary and testimonial evidence that was not in English, and the presentation to Cook County judges and juries of testimony and documents translated from Russian was not uncommon.

¶ 34    The trial court noted that neither Cook County nor London was likely to succeed in compelling the appearance of the local government officials in Kemerovo, but Baker LLP did not indicate any desire to present them as part of the defense. Although Baker LLP contended that attorneys Andrew Keltie, Charles Thompson, and Ekaterina Finkel, who were affiliated with defendants' London office, would be essential to plaintiffs' claim and would not be subject to subpoena in the United States, Baker LLP currently did not maintain a claim against any other defendant or an affirmative defense based on a factual claim involving Keltie, Thompson, or Finkel. Plaintiffs have the burden of proving legal malpractice. If plaintiffs can produce witnesses from Russia and London to advance its claims, then Baker LLP will have the opportunity to cross-

examine them in defense. Moreover, Baker LLP had been successful in securing the affidavit of Sergei Votishkin of Baker CIS, who was one potential witness. Furthermore, although it would be difficult to secure the cooperation of the Shchukin family organization anywhere, no interest would be served by placing superior weight on the convenience to the members or operatives of any alleged London-based organized crime group.

¶ 35    Finally, the trial court determined that neither a Chicago jury nor the London court could visit the site of the mine in Russia, but such a viewing would not be essential for resolution of this legal malpractice case, which did not involve the operation of the mine or require examination of the facility.

¶ 36    The trial court's explanations for why the private interest factors did not strongly favor transfer to London were reasonable. We have approved similar conclusions when evidence and witnesses were dispersed among multiple jurisdictions, both domestic and international. See *Vivas v. Boeing Co.*, 392 Ill. App. 3d 644, 658-59 (2009) ("Observing correctly that potential witnesses and evidence were scattered among different states and countries, the trial court concluded that this factor did not tilt in favor of any one forum. We cannot find that this conclusion was an abuse of discretion."). Baker LLP fails to carry its considerable burden to show the trial court abused its discretion in concluding that the relevant private interest factors did not strongly favor transfer.

¶ 37                              C. Public Interest Factors

¶ 38    We next address the public interest factors, which the court weighs together with the private interest factors. The public interest factors include "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a

forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets." *Langenhorst*, 219 Ill. 2d at 443-44.

¶ 39    Baker LLP argues the public interest factors support London, which has a greater interest in the dispute than Cook County because Lehram is a London-based firm and the Shchukin family has London ties. Furthermore, Russian law likely governs, and London is experienced in applying foreign law because of the international nature of commercial disputes. Baker LLP asserts that it is more convenient for London judges to relieve the Cook County court of the burden that London courts have already been carrying in deciphering and applying Russian law. Baker LLP asserts that the trial court should not impose trial expenses and jury duty on Cook County residents because Cook County has no connection to this litigation. According to Baker LLP, London has a significant interest in adjudicating the rights of a London-based company regarding legal work allegedly thwarted by London-based actors. Baker LLP adds that it had nothing to do with representing plaintiffs in the Russian courts, and there is no connection to Cook County other than plaintiffs' general claims that Baker LLP is part of a global law firm.

¶ 40    Plaintiffs argue that Cook County has an interest in deciding a controversy involving a global law firm that has been anchored in Chicago for decades, London does not have an interest in applying Russian law, Cook County is competent to apply Russian law if necessary, and Baker LLP is a Cook County law firm and Cook County residents have an interest in its alleged malpractice. Additionally, none of the alleged malpractice took place in London, and jury trials in Cook County have resumed since the pandemic.

¶ 41    The trial court stated that although the events involving the underlying controversy concerning the Russian mine did not occur in either Cook County or London, plaintiffs' claims involve the legal services of a Chicago-based law firm, which is a local consideration. Thus, it would not be unfair to burden Cook County residents with this litigation because Baker LLP is located in Cook County. The trial court stated that although this legal malpractice claim concerned defendants' work as an international law firm, that work had been anchored in Chicago for generations. Moreover, the administrative burden of adding this case to the Cook County docket was not a basis for dismissal. Jury proceedings that were stayed due to the pandemic have resumed and proceed at a pace such as before the pandemic, so this case could proceed to trial as soon as the parties were ready. The trial court appreciated Scott's expert opinion about the credentials and expertise of the London High Court judges and the complex disputes they handle. But these parties had opted for a civil jury trial, and decision-making by juries was considered an affirmative value of the Illinois civil court system rather than a burden. The court stated that the superior deliberative decision-making value and increased public legitimacy present in a racially and ethnically diverse jury pool was now receiving long overdue recognition from courts and scholars. Moreover, Illinois jurors regularly decided complex matters, including legal malpractice claims where the underlying litigation was technical or complex.

¶ 42    The trial court clearly considered the public interest factors and concluded that a Cook County judge was able to hear this case and the jurors in Cook County have some interest in its outcome. This conclusion aligns with the three public interest factors: (1) the controversy is sufficiently local, (2) the litigation has enough connection to Cook County for jurors to hear it, and

(3) hearing the case in Cook County causes no administrative difficulties that would rise to the level of warranting a dismissal from this forum.

¶ 43     Baker LLP would have us hold this conclusion unreasonable. Baker LLP argues that London citizens have the primary interest and that Cook County citizens have no meaningful interest at all. Baker LLP focuses on the physical location of Lehram in London, but plaintiffs assert that Lehram has no financial assets and no physical office or employees in London. Generally, litigation should ensue in the forum where the injury happened, as Illinois courts have held. *Whirlpool Corp. v. Certain Underwriters at Lloyd's London*, 295 Ill. App. 3d 828, 838 (1998). But the trial court already has ruled that Moscow, where the alleged injury happened, is not an adequate or appropriate forum.

¶ 44     Because Cook County residents have an interest, it follows that the case remains here. See *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 46 ("If Illinois had any relevant or practical connection with this litigation, then it would have an interest in providing a forum."). While not dispositive, Baker LLP maintains its headquarters and principal place of business in Cook County. See *Vivas*, 392 Ill. App. 3d at 661 (while the location of a corporate headquarters or principal place of business is not a dispositive factor, it is still a factor courts may consider). Again, we cannot say the trial court abused its discretion.

¶ 45     In Baker LLP's view, Russian law controls all substantive issues. However, choice-of-law issues "are not usually dispositive" in deciding a *forum non conveniens* motion. *Vivas*, 392 Ill. App. 3d at 662. Regarding plaintiffs' legal malpractice claims, Baker LLP has failed to show why an Illinois court would not be able to apply Russian law as effectively as a London court. The trial

court reasonably determined that an Illinois court would apply Russian law as effectively as a London court.

¶ 46　The trial court properly exercised its discretion in finding the public interest factors did not strongly favor transfer to London.

¶ 47　　　　　　　　　　　　D. Balancing the Factors

¶ 48　The trial court balances the private and public interest factors in deciding a *forum non conveniens* motion without emphasizing one factor. *Gridley*, 217 Ill. 2d at 169-70; *Langenhorst*, 219 Ill. 2d at 443. "On review, the trial court's decision will be reversed only if *** the court abused its discretion in balancing the relevant factors." *Dawdy*, 207 Ill. 2d at 176-77. We conclude that Baker LLP has not demonstrated an abuse of discretion.

¶ 49　According to the dissent, the trial court erroneously and prematurely concluded that a legal unity of liability exists for all the defendants even though the parties dispute that issue and it will ultimately be decided at trial. The record, however, establishes that the trial court decided the *forum non conveniens* motion to dismiss consistent with Illinois Supreme Court Rule 187 (eff. Jan. 1, 2018), which provides that these motions

> "may be supported and opposed by affidavit. In determining issues of fact raised by affidavits, any competent evidence adduced by the parties shall also be considered. The determination of any issue of fact in connection with such a motion does not constitute a determination of the merits of the case or any aspect thereof."

Here, plaintiffs supported their allegations regarding the legal unity of liability of all the defendants with, *inter alia*, the affidavits of plaintiff Rodriguez and Baker LLP's general counsel emeritus

Edward Zulkey; a Mississippi circuit court case wherein defendants' emeritus general counsel stated that Cook County was its principal place of business; and the Baker & McKenzie code of business conduct, which states, "We are one firm. What one of us does, all of us do." This evidence was sufficient to support, for the limited purposes of the *forum non conveniens* motion, plaintiffs' allegations regarding the legal unity of liability of all the defendants.

¶ 50    Furthermore, the dissent's reliance on *Dawdy*, 207 Ill. 2d at 182, for the proposition that the fact that Baker LLP conducts business in Cook County does not affect the *forum non conveniens* issue is misplaced. In *Dawdy*, the defendant was alleged to have a presence in the forum based upon having a post office box in the county, and the court merely found that conducting business in a county could not be dispositive of the *forum non conveniens* issue. *Id*. Baker LLP does not merely conduct business in Cook County. Rather, Baker LLP resides in Cook County, which is its principal place of business, and this is a factor courts properly consider in determining *forum non conveniens* motions. Here, the parties cannot litigate this matter in Russia, the forum where the tort occurred, but they can litigate in the forum that is the principal place of business of Baker LLP.

¶ 51    In addition, the location of certain witnesses in London does not indicate that the trial court's decision that Baker LLP failed to meet its heavy burden under the *forum non conveniens* doctrine was an abuse of discretion. We disagree with the dissent's contention that the trial court conducted an inadequate consideration of the compulsory process of witnesses factor. The dissent refers to three essential London attorneys, but the record indicates that they merely worked on the mine issue before the matter was transferred to defendants' Moscow office, where the alleged

malpractice occurred, and plaintiffs do not challenge the conduct of defendants' three London attorneys. Regardless, the appearance of defendants' three London attorneys could be secured under Illinois Supreme Court Rule 237(b) (eff. Oct. 1, 2021), which addresses requiring the appearance, whether remotely or in person, of the officers, directors or employees of a party. Also, Baker LLP does not address why plaintiffs' London lawyer Wade would not be protected from testifying by the attorney-client privilege. In addition, although plaintiffs' mine valuation expert MacGregor works in London, his firm's principal place of business is Cook County. Moreover, if plaintiffs failed to bring MacGregor, who is an Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018) witness, to Cook County for the trial, then plaintiffs would be subject to Illinois Pattern Jury Instruction, Civil, No. 5.01 (2024), which provides that a party's failure to produce evidence within his control creates a presumption that the evidence if produced would have been adverse to him. Furthermore, Baker LLP has not identified any members of the alleged London-based Shchukin family crime organization as potential witnesses.

¶ 52    Aside from the alleged London witnesses, other witnesses are expected to testify about Baker LLP's global presence, structure, and responsibility for defendants' global offices, which is relevant to plaintiffs' claim that defendants are a single entity and, as such, cannot draw artificial lines to isolate the Chicago and other offices from the Moscow office. These witnesses include Edward Zulkey, emeritus general counsel of Baker LLP, who is located in Chicago; Kerry Miller, who is located in Chicago and is responsible for enforcing defendants' code of business conduct; Paul Eichelman, who resides in Cook County; and Peter Engstrom, who resides in San Francisco.

¶ 53    The dissent overstates the significance of the mine's location in Russia and the possibility of viewing it as the mine can be seen no better from London than from Chicago. Also, the issue of court congestion in Cook County lacks merit. Baker LLP has forfeited any issue of court congestion in Cook County versus London because Baker LLP has not presented any evidence that compares the court congestion between these two fora.

¶ 54    Finally, the trial court's discussion of jury trials has been misconstrued by the dissent to conclude that the trial court's analysis erroneously gave weight to the possibility of a jury trial. The trial court, in reaching its conclusion that Baker LLP carried its burden to show that London was an available and adequate forum, clearly stated that, although both parties had asserted their right to a jury trial, the fact that the London forum would not provide a jury trial in this matter did not render the London forum unfair and the trial court had no doubt that the London High Court would provide the parties with reasonable access to a substantially fair hearing and adequate remedy. Thus, any criticism that the trial court improperly gave weight to the availability of a jury trial as a factor in its analysis is unfounded. Rather, the trial court raised the jury trial discussion in the context of its analysis of the public interest factor concerning the fairness of placing the burden of jury duty on the residents of Cook County. In this context, the trial court stated that decision-making by juries was considered an affirmative value of the Illinois civil court system rather than a burden.

¶ 55                               III. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 57    Affirmed.

¶ 58    JUSTICE D. B. WALKER, dissenting,

¶ 59    This case presents a unique circumstance not usually found in our analysis of legal malpractice *forum non conveniens* issues. The attorneys who engaged in the alleged misconduct did not work for the law firm plaintiffs claim is liable for malpractice. Although the trial court is vested with broad discretion when ruling on a *forum non conveniens* motion, the court abuses its discretion if it improperly weighs the relevant considerations. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 106 (1990). Given the underlying purpose of the *forum non conveniens* doctrine, I believe the trial court abused its discretion in denying Baker LLP's motion to dismiss.

¶ 60    Baker & McKenzie firms are organized as a Swiss verein business structure with member firms from around the world. The attorneys retained by Lehram were members of Russia-based Baker CIS. Plaintiffs allege, however, that under the Swiss verein structure, there "appears to be one unified body of thousands of lawyers in dozens of domestic and international offices holding themselves out to the public as 'Baker & McKenzie.' " Therefore, plaintiffs contend that Baker LLP, which is based in Chicago, can be held liable for the alleged malpractice of Baker CIS attorneys. Baker LLP disputes this allegation, emphasizing that no attorney from Baker LLP represented Lehram in the matters underlying its legal malpractice claim.

¶ 61    Although the parties dispute the malpractice liability of Baker LLP based on the Swiss verein business structure, the trial court determined that, for purposes of the *forum non conveniens* motion, it "considers the Plaintiffs' claims as they are stated, including the claim of a legal unity of liability of all Defendants." Based on this presumption, the trial court found that "[t]he events

of the Plaintiffs' claims regard the services of a Chicago-based law firm. That is a local consideration." The court further found that "[i]t would not be unfair to burden the residents of this county with this litigation. One of the Defendants in this case is located in this county. *** This claim regards the Defendants' work as an international law firm, but work which has been anchored in Chicago for generations."

¶ 62     The majority finds that the trial court's determination on this issue was consistent with Rule 187. This rule provides that the trial court may determine issues of *fact* raised by supporting affidavits, as well as any competent evidence adduced by the parties. The majority cites evidence such as the affidavit of Rodriguez, wherein he stated that he was told "Baker & McKenzie's home forum was the same location as its headquarters – Chicago, Illinois," as supporting the trial court's determination. However, the fact that Baker LLP resides in Chicago was not in dispute. Also, the mere fact that Baker & McKenzie's code of business conduct referred to its entities as "one firm" was not determinative of the legal liability issue. Whether a "legal unity of liability" exists between all Baker defendants is ultimately a question of *law*, which Rule 187 does not address.

¶ 63     The trial court erred in concluding that "a legal unity of liability" exists for all Baker defendants when the issue is in dispute and will ultimately be decided at trial. Moreover, the court relied on its premature conclusion to find that the events underlying plaintiffs' legal malpractice claim "regard the services of a Chicago-based law firm."

¶ 64     The record indisputably shows that the alleged wrongful conduct underlying plaintiffs' malpractice claim actually occurred in Russia by Russian-based attorneys, none of whom worked for Baker LLP. To prove a claim of legal malpractice, plaintiffs must show that an attorney's

negligent act or omission proximately caused plaintiffs to lose their underlying action. *Webb v. Damisch*, 362 Ill. App. 3d 1032, 1038 (2005). In other words, resolution of a legal malpractice case requires the scrutiny of certain conduct by specific attorneys on a particular case. Thus, it is significant to the *forum non conveniens* analysis that no attorney from Baker LLP performed work on the Lehram case. See *Fennell v. Illinois Central Railroad Co.*, 2012 IL 113812, ¶¶ 26, 28 (finding that where the plaintiff did not reside in Illinois, no witnesses connected to the underlying occurrence resided in Illinois, and the cause of action did not arise in Illinois, the plaintiff's chosen Illinois forum should be granted "*far* less deference"). (Emphasis in the original.)

¶ 65 I believe plaintiffs' choice of forum should be given even less deference here where the attorneys who engaged in the allegedly wrongful conduct did not work for Baker LLP, the only defendant served in this case, and Baker LLP is the only connection to plaintiffs' chosen forum. Furthermore, the issue of Baker LLP's liability in this case arises only if plaintiffs successfully prove their underlying legal malpractice claim against attorneys who did not work for Baker LLP. Courts conduct the *forum non conveniens* analysis based on the particular claims raised in the complaint. See *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005) (limiting review of the trial court's *forum non conveniens* ruling to the remaining unjust enrichment claim where the plaintiff could not plead an adequate claim for consumer fraud). The malpractice claim here references the misconduct of Baker CIS attorneys hired by London-based Lehram to regain its rights to a Russian mine. The claim alleges no misconduct in Cook County, nor does it involve any Baker attorneys based in Cook County.

¶ 66    Even if we presume that Baker LLP's connection to the underlying occurrence through the Swiss verein business structure is a consideration, the mere fact that Baker LLP resides in Cook County is just one factor to consider when balancing the private and public interest factors relevant to the *forum non conveniens* analysis. *Berbig v. Sears Roebuck and Co., Inc.*, 378 Ill. App. 3d 185, 189 (2007), citing *Gridley*, 217 Ill 2d at 173. If this were not so, any time such a connection exists the defendant "would be subject to suit in that forum regardless of the inconvenience. This result is contrary to the purpose of the doctrine, which is to avoid litigation in an unduly inconvenient forum." *Jones v. Searle Laboratories*, 93 Ill. 2d 366, 377 (1982).

¶ 67    The case before us involves a legal malpractice claim based on the conduct of attorneys hired by Lehram to invalidate the allegedly fraudulent transfer of a Russian mine to a Russian limited liability company. Plaintiffs allege that Russian authorities forced Lehram's director, Igor Rudyk, to transfer the rights to the mine. This alleged transfer occurred in Russia. Lehram hired Russia-based Baker CIS to pursue its rights regarding the mine, and Russia-based attorneys Gomanov and Lim worked on the case. The parties agree that Russian substantive law governs plaintiffs' claims involving the mine.

¶ 68    Since a forum in Russia is presently unavailable, I agree with Baker LLP that the private and public interest factors, considered together, weigh strongly in favor of the convenience of London as the forum over Cook County.

¶ 69    As for the private factors, Lehram was a London company when the misconduct occurred, and plaintiff Rodriguez, the principal shareholder of Lehram, is a Spanish citizen. Evraz Holdings, the entity that sold the mine to Lehram, is also based in London. Plaintiffs describe three London

attorneys from Baker & McKenzie UK LLP, Andrew Keltie, Charles Thompson, and Ekaterina Finkel, as essential witnesses, and their new lawyer is based in London. Also, plaintiffs' expert on the valuation of mines, MacGregor, is a London resident. Tsvetkov, a representative of the entity asserting ownership of the mine, is a London resident. Importantly, plaintiffs allege that the mine was wrongly transferred to an entity associated with the Shchukin family, who are based in London. In contrast, there are no witnesses in Cook County with personal knowledge of the circumstances involving the mine transfer or Lehram's efforts to regain rights to the mine.

¶ 70    These London-based witnesses are subject to compulsory process in London, whereas a Cook County court has no authority to compel their appearance. Even if plaintiffs' witnesses agree to testify in plaintiffs' case in Cook County, a Cook County court could not guarantee the witnesses' continued availability for adverse examination by defendants. The trial court noted that it may be difficult in any forum to secure the appearance of Shchukin family members. However, the London High Court possesses the authority to do so since the family is based in London. A Cook County court has no such authority. The trial court conducted an inadequate consideration of this factor, finding only that both London and Cook County "have credible pretrial discovery and compulsory testimonial processes." This was an abuse of discretion.

¶ 71    The trial court also determined that although the mine is located closer to London than Chicago, "[t]here are no claims in this case that regard the operation of the mine or require examination of the facility." This factor, however, concerns the possibility of viewing the site, not the necessity of doing so. *Fennell*, 2012 IL 113812, ¶ 37. The mine's value is a critical component of plaintiffs' legal malpractice claim. The injury in a legal malpractice action is "a pecuniary injury

to an intangible property interest caused by the lawyer's negligent act or omission." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 225 (2006). No malpractice action can be maintained unless the attorney's negligence proximately caused damage to the client. *Id.* Therefore, the existence of actual damages is essential to a legal malpractice cause of action. *Id.* The valuation of the mine, the rights to which plaintiffs claim they lost due to the misconduct of their attorneys, is a critical component of plaintiffs' damages claim. The mine's location, and the possibility of viewing it, are not insignificant to the *forum non conveniens* analysis.

¶ 72     Other practical considerations that make a trial easy, expeditious and inexpensive also strongly favor London as a forum. All accessible witnesses with personal knowledge of the occurrence are in London, not Cook County. As a result, it would be less expensive, and more expeditious, to conduct the trial in a London court. Although the trial court acknowledged the expense and inconvenience of conducting discovery and a trial in Cook County, because it "may include people located outside the United States," the court found that these challenges would be present "in London or Chicago or anywhere." The trial court further noted that witnesses in the United Kingdom are "more conveniently available in remote discovery and testimonial proceedings than ever they were before."

¶ 73     While Illinois Supreme Court Rule 241 (eff. Feb. 2, 2023) allows remote testimony at a trial upon a showing of good cause and prior approval of the court, the committee notes to Rule 241 state that "[t]he presentation of in-person testimony remains of utmost importance in trials and evidentiary hearings." Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023). As such, the fact that essential London-based witnesses and evidence are more readily available at less expense

in a London court, and no occurrence witnesses reside in Illinois, strongly favors transfer of the case to London. See also *Larson v. Illinois Central School Bus, LLC*, 2023 IL App (3d) 220360, ¶ 27 (finding that where the vast majority of witnesses resided in Texas, and none of the plaintiff's medical treatment occurred in Illinois, ease of access to evidence favored dismissal even though such witnesses could provide remote testimony in an Illinois court).

¶ 74 Public interest factors also strongly favor transfer of the case to London. Cook County has little interest in a case involving Russian actors and a London-based company's rights to a Russian mine in which Russian substantive law will be applied. Even the trial court recognized that "[t]his is not a local controversy of Cook County, Illinois." The court determined, however, that "[t]he events of the Plaintiffs' claims regard the services of a Chicago-based law firm. That is a local consideration." As already discussed, the trial court prematurely presumed Baker LLP's liability for the malpractice of attorneys associated with Baker CIS. This was the court's only basis for connecting Baker LLP, and Cook County, to the litigation, and it constituted an abuse of discretion.

¶ 75 It is also worth noting that, based on the unrebutted affidavit of expert Andrew Scott, the trial court had "no concern or doubt that in the London High Court the parties would have reasonable access to a substantially fair hearing and adequate remedy. London is as truly a substantially fair and adequate forum as Moscow is not." The court also did not "doubt the credentials and expertise of the London High Court judges."

¶ 76 The misconduct alleged by plaintiffs did not occur in Cook County and was not perpetrated by Baker LLP attorneys. Baker LLP's liability for the conduct of member attorneys of the Swiss verein has not been determined. Our supreme court has taken judicial notice of the congested

dockets of Cook County circuit courts. See for *e.g.*, *Jones*, 93 Ill. 2d at 375. It would be unfair to burden Cook County residents with the cost and effort of a jury trial on a case involving little local interest. The public interest factors strongly favor transfer of the case to London.

¶ 77    The *forum non conveniens* doctrine "is founded in considerations of fundamental fairness and sensible and effective judicial administration." *Fennell*, 2012 IL 113812, ¶ 14. A court may decline proper jurisdiction of a case "if it appears that another forum can better serve the convenience of the parties and the ends of justice." *Id.* ¶ 12. In this case, all of the occurrence witnesses are located in London, Europe, or Russia. These witnesses are not available through compulsory process in Cook County and transporting them to Cook County would be costly. The misconduct alleged by plaintiffs did not occur in Illinois, nor are the persons charged with the misconduct located here. London would provide an adequate forum for the litigants, whereas the Cook County circuit court has a highly congested docket. Furthermore, plaintiffs' choice of forum is granted far less deference because they do not reside in Cook County, the cause of action did not arise in Cook County, and no occurrence witnesses reside here. To determine otherwise would open Baker LLP to suits in Cook County whenever a legal malpractice, slip and fall, or any claim is made based on an occurrence taking place at another member of the Baker Swiss verein located anywhere in the world. This surely is not the intent of Illinois *forum non conveniens* jurisprudence.

¶ 78    The trial court, however, did not adequately consider these factors while giving weight to other, less relevant factors. In particular, the trial court found it significant that the parties opted for a jury trial, and the court considered jury decision-making to be a valuable component of the Illinois civil court system. The trial court should not have given the possibility of a jury trial any

affirmative weight in the *forum non conveniens* analysis here. Rather, the fact that United States courts are viewed as "extremely attractive to foreign plaintiffs," due to the availability of jury trials, presents a "practical problem" to consider. *Piper Aircraft Co. v. Reyno*, 102 S. Ct. 252, 264, fn. 18 (1980). If this factor is given substantive weight in a case like the one before us, American courts "would become even more attractive," and "[t]he flow of litigation into the United States would increase and further congest already crowded courts." *Id.* The trial court's decision to give weight to this factor is unsupported by law.

¶ 79    For these reasons, I would find that the trial court abused its discretion in denying Baker LLP's motion to dismiss. Therefore, I respectfully dissent.

***Lehram Capital Investments, Ltd. v. Baker & McKenzie International***,
**2023 IL App (1st) 230095**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-L-6704; the Hon. James E. Snyder, Judge, presiding. |
| **Attorneys for Appellant:** | Karen Kies DeGrand, Robert W. Smyth Jr., Monica L. Smit, and Laura Coffey Ieremia, of Donohue Brown Mathewson & Smyth LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Daniel F. Konicek and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellees. |